Versie BURCH *v.* Bennie GRIFFE and Douglas Griffe

00-444 29 S.W.3d 722

Supreme Court of Arkansas
Opinion delivered November 9, 2000

*Frances Morris Finley*, for appellant.

*Dodds, Kidd, Ryan & Moore*, by: *Greg Alagood*, for appellees.

DONALD L. CORBIN, Justice. This is a probate case involving a surviving spouse's right to take against his wife's will. Appellant Versie Burch, the personal representative of the estate of Aileen Griffe, appeals the Pulaski County Probate Court's order allowing the surviving spouse, Robert Griffe, to elect to take against the will. Appellees in this matter are Robert Griffe's co-guardians, Bennie Griffe and Douglas Griffe. This appeal presents an issue of first impression, requiring our interpretation of Ark. Code Ann. §§ 28-39-401 to -405 (1987). Our jurisdiction is thus pursuant to Ark. Sup. Ct. R. 1-2(b)(1). We find this appeal meritorious, and we reverse.

The facts of this matter are somewhat convoluted, as they are derived from two separate probate cases. Aileen Griffe died of respiratory failure on November 18, 1997. She left a will that distributed her property as follows: (1) all of her jewelry plus

$25,000 to her niece, Charlotte Griffe Simpson; (2) all of her stock to Appellant; and (3) the rest and residue of her estate to her husband, Robert. The will further provided that Robert should be appointed as executor of her will, but in the event that he should be unable to serve as executor, then Appellant should be appointed. At the time of Aileen's death, Robert had been diagnosed with senile dementia of the Alzheimer's type and was receiving care and treatment at the Chenal Rehabilitation Center.

On February 11, 1998, Appellant petitioned the Pulaski County Probate Court, First Division, to be appointed as personal representative of Aileen's estate. Attached to the petition was a letter from Robert's treating physician stating that Robert was not competent to serve as executor of his wife's estate. On May 12, 1998, the First Division admitted Aileen's will to probate and appointed Appellant to serve as personal representative of the estate. No notice was ever sent to Robert by the court clerk, regarding the probate of Aileen's will and his right to elect to take against the will. However, on September 29, 1998, Appellant filed a waiver of notice and entry of appearance, as well as a waiver of inventory and accounting, on Robert's behalf. This, she did through a durable power of attorney, which Robert had granted to his wife and Appellant in May of 1995.

On October 27, 1998, Appellees were appointed co-guardians of Robert's estate by the Fifth Division of the Pulaski County Probate Court. On November 12, 1998, Appellees filed a petition to revoke the waiver that Appellant had filed on Robert's behalf. Appellees then demanded notice of any hearing on Aileen's will and requested an inventory and accounting of her estate. A final accounting was filed by Appellant on February 16, 1999. This accounting reflected that the total value of Aileen's estate was $220,500. On April 6, 1999, Appellees filed an objection to the final accounting, questioning the ownership of certain shares of stock. Two days later, Charlotte Simpson filed a similar objection.

On April 12, 1999, Appellees filed an election on Robert's behalf to take against his wife's will. In response, Appellant filed a motion to strike the election, alleging that it was not timely, and that it was made without authorization of the Fifth Division, which had jurisdiction over Robert's guardianship. On August 18, 1999, before any action was taken on the motion to strike, Robert died.

Appellees subsequently petitioned the Fifth Division to authorize, after the fact, their action of exercising Robert's election to take against the will. In a letter order dated October 1, 1999, the Fifth Division granted the authorization. The court reasoned that, under the circumstances, it would have authorized the election at the time it was filed.

On December 3, 1999, the probate of Aileen's estate was transferred from the First Division to the Fifth Division, thus giving the Fifth Division jurisdiction over both cases. The Fifth Division ultimately allowed Robert to take against his wife's will, finding that (1) the election was timely made under section 28-39-403; (2) Appellees' failure to obtain prior authorization from the probate court before they filed the election was not fatal; and (3) Robert's right of election was not invalidated by his death, because it was filed during his lifetime.

 We review probate proceedings *de novo*, and we will not reverse the decision of the probate court unless it is clearly erroneous. *Babb v. Matlock*, 340 Ark. 263, 9 S.W.3d 508 (2000) (citing *Buchte v. State*, 337 Ark. 591, 990 S.W.2d 539 (1999); *Barrera v. Vanpelt*, 332 Ark. 482, 965 S.W.2d 780 (1998)). Similarly, we review issues of statutory construction *de novo*, as it is for this court to decide what a statute means. *Stephens v. Arkansas Sch. for the Blind*, 341 Ark. 939, 20 S.W.3d 397 (2000); *Shaw v. Shaw*, 337 Ark. 530, 989 S.W.2d 919 (1999). We are not bound by the trial court's decision; however, in the absence of a showing that the trial court erred, its interpretation will be accepted as correct on appeal. *Id.* We begin our consideration of this appeal by reviewing the relevant statutes.

Section 28-39-401 provides in part that when a married person dies testate, the surviving spouse has the right to take against the will and receive either a dower or curtesy interest, provided that the spouses have been married continuously for over one year. Section 28-39-405 sets out who may make the election to take against the will and who may benefit from it:

> (a) The right of election of the surviving spouse is personal. It is not transferable and *does not survive the surviving spouse.*
>
> (b) The guardian of the estate of an incompetent surviving spouse, *when authorized by the court having jurisdiction over the estate of*

*the ward*, may elect to take against the will in the ward's behalf. (Emphasis added.)

We believe that this section requires a reversal of the probate court's order, as the decisive factor in this case is that Robert died before a proper election was made on his behalf.

The record reflects that Appellees filed the election, on Robert's behalf, to take against Aileen's will on April 12, 1999, prior to Robert's death. It is undisputed, however, that Appellees never sought or received the probate court's authorization prior to the time that they purported to make the election. It is also undisputed that Appellees did not seek the probate court's authorization until after Robert's death. Accordingly, their failure to seek and obtain court authorization during Robert's lifetime nullifies the election.

■ Under section 28-39-405(b), the guardian's power to make the election on behalf of the surviving spouse is clearly limited by, and dependent upon, the probate court's authorization of the election. Undoubtedly, this provision was intended by the legislature to act as a safety net, enabling the probate court to consider all the circumstances before authorizing the election. Any other interpretation would result in the guardian being given complete authority to make the election, regardless of whether it is in the best interest of the surviving spouse. Had the legislature wished to place that authority solely with the guardian, it could have done so. Because it did not, we conclude that the election in this case was not effective.

We disagree with the probate court's interpretation of *Jeffcoat v. Harper*, 224 Ark. 778, 276 S.W.2d 429 (1955), on this point. There, in reference to the predecessor to section 28-39-405(b), this court stated: "Furthermore, the statute takes into account the possibility of the surviving spouse's insanity, *authorizing the guardian to make the choice for his ward.*" *Id.* at 780, 276 S.W.2d at 430 (emphasis added). The probate court interpreted this language as somehow minimizing the need to obtain court authorization, so long as the result was just. For the reasons stated above, we do not share this view. Moreover, this language is *dictum*, as *Jeffcoat* did not involve an attempt by a guardian to make an election without prior court authorization. In fact, no guardian had been appointed for the surviving spouse in that case.

 In any event, notwithstanding Appellees' failure to obtain authorization prior to filing the election, we conclude that the probate court was without power under section 28-39-405 to authorize any election after Robert's death. "The legislature could not have declared more plainly that the right of election is personal, that it does not survive the surviving spouse." *Jeffcoat*, 224 Ark. at 780, 276 S.W.2d at 430. This declaration certainly carries with it the implication that the right is intended for the personal benefit of the surviving spouse. *Id.* Indeed, the primary reason that the law allows a surviving spouse the right to take against the will is to prevent injustice that may result from the testator's failure to provide for the surviving spouse in the will. *See Estate of Dahlmann v. Estate of Dahlmann*, 282 Ark. 296, 668 S.W.2d 520 (1984). Thus, when an incompetent surviving spouse dies prior to the time that an election is made and authorized on his or her behalf, there is no justification for allowing the election. This point is well illustrated by the following case.

In *In re: Peden's Estate*, 185 A.2d 794 (Pa. 1962), John Peden died testate and was survived by his wife, Bella. Bella was subsequently adjudged incompetent, and a guardian was appointed on her behalf. Without the authority of the court having jurisdiction over the guardianship, the guardian elected on Bella's behalf to take against her husband's will. Shortly thereafter, Bella died. Bella's heirs and administrators urged the appellate court to uphold the election. The court refused, holding:

> Since the election was filed by Bella's guardian in Bella's lifetime *without the authority of the Court*, it was a nullity; after Bella Peden's death the Court could not authorize or direct the guardian of her estate to file an election to take against or under his will.

*Id.* at 796. Citing *In re: Harris's Estate*, 41 A.2d 715 (Pa. 1945), the court reasoned that the guardian of an incompetent person cannot elect on behalf of the ward to take against the will unless empowered to do so by the court, which is the real guardian of the incompetent person. The court held that the functions and powers of the guardian cease when the ward dies, and that, likewise, the court's power to act also ceases. Thus, *"[a]fter the ward's death, no action as to an election was within the power of either court or guardian." Peden's Estate*, 185 A.2d at 797 (quoting *In re: Gerlach's Estate*, 193 A. 467, 471 (Pa. Super. Ct. 1937)). By the same token, the court is

without power to enter a *nunc pro tunc* order authorizing an election after the death of the ward. We believe that this reasoning is sound.

■ Accordingly, we reverse the probate court's untimely authorization of Robert's election to take against his wife's will. Because the right to elect is personal and does not survive the surviving spouse, the probate court lacked the power to authorize the election after Robert died. Under the facts of this case, it is irrelevant that the election was attempted during Robert's lifetime, as it lacked the required authorization of the court having jurisdiction over Robert's guardianship. In short, both the guardians and the probate court exceeded their powers in this case. Because we reverse on this issue, we do not reach Appellant's remaining arguments. We note, however, that our opinion today is not intended to affect the additional issues currently pending before the probate court, namely those concerning the accounting of Aileen's estate and Appellees' allegation that Appellant breached her fiduciary duty as personal representative.

Reversed and remanded.