Kevin MAYBERRY *v.* Dorothy FLOWERS
and Michael Flowers

00-1460 65 S.W.3d 418

Supreme Court of Arkansas
Opinion delivered January 31, 2002

*Tripcony Law Firm, P.A.*, by: *James L. Tripcony* and *Scott A. Scholl*, for appellant.

*Gordon, Caruth & Virden, P.L.C.*, by: *Ben Caruth*, for appellee Dorothy Flowers.

*Scott Adams*, for intervenor Michael Flowers.

DONALD L. CORBIN, Justice. This case raises the question of what notice must be given to a natural parent before the parent's right to his or her child may be terminated through adoption. Appellant Kevin Mayberry appeals the judgment of the Conway County Probate Court setting aside his adoption of James Walter Flowers, the minor child of Appellee Michael Flowers and the late Reneé Flowers Mayberry. This case was certified to us from the Arkansas Court of Appeals as presenting an issue of significant public interest. Our jurisdiction is thus pursuant to Ark. Sup. Ct. R. 1-2(b)(4). The sole issue on appeal is whether Michael received notice of the pending adoption, in compliance with the requirements of due process. We conclude that he did not, and we affirm the probate court's ruling.

The record reflects that James was born on August 28, 1991, to Reneé and Michael Flowers. Reneé and Michael divorced on October 9, 1992, and Reneé was awarded custody of James. Approximately one year later, Reneé married Kevin Mayberry. Reneé brought two children to the marriage, John and James, and three children were subsequently born to the Mayberrys. Kevin and Reneé filed a joint petition to adopt James on June 14, 1996. In the petition, Reneé gave her consent for James's adoption. The petition alleged that Michael's consent was not necessary because he had failed, without justifiable cause, to communicate with James and to contribute to James's support. Despite those allegations, the probate court appointed an attorney *ad litem* for Michael. In a report filed with the probate court, the attorney *ad litem* stated that on August 14, 1996, she had mailed a copy of the adoption petition by certified mail to Michael at his last known address. The letter was returned unclaimed. Thereafter, a warning order was published in the *Petit Jean County Headlight* on February 19, and 26, 1997.

Michael made no appearance in the matter, and on June 16, 1997, the probate court granted a temporary order of adoption.

Only months after the adoption order was entered, Kevin and Reneé separated. Reneé filed for divorce on November 10, 1997. She also filed a motion to dismiss the adoption proceeding. While the divorce was pending, Reneé was granted temporary custody of the five children, including James. She also applied for and was granted an order of protection from Kevin.

At some point in February 1998, Reneé telephoned Michael and told him that Kevin was trying to adopt James, and that Michael needed to be at the courthouse for a hearing on February 13, 1998. On the date of the hearing, Michael arrived at the courthouse just as Reneé was leaving. Reneé informed him that Kevin had not shown up for the hearing and that the judge had dismissed the adoption. Michael asked Reneé if he needed to do anything or fill out any paperwork to prevent the adoption. Reneé assured him that the matter was finished.

Two months later, on April 28, 1998, Reneé died. Following her death, Michael contacted Kevin and told him that he would be coming to get James, but that he would allow James to stay with Kevin until the 1998 school year was finished. That summer, Michael took custody of James. Since that time, James has lived with either Michael or Michael's mother, Appellee Dorothy Flowers.

On December 14, 1998, ten months after the adoption was dismissed and eight months after Reneé died, Kevin filed a petition for writ of habeas corpus in the Conway County Chancery Court seeking custody of James. Kevin claimed that he was the adoptive father of James by virtue of the order entered on June 16, 1997. He asserted that the June 16 order was a final order that declared James to be the child of Kevin and Reneé. He argued that the order dismissing the adoption was void because it was entered more than ninety days after the decree that it purported to dismiss, in violation of Ark. R. Civ. P. 60(b). The chancery court denied Kevin's petition.

Kevin appealed to the court of appeals, which reversed the chancery court and upheld the adoption. *See Mayberry v. Flowers*, 69 Ark. App. 307, 12 S.W.3d 652 (2000). The court of appeals concluded that the June 16, 1997 decree, though styled "Temporary

Order of Adoption," was actually a final order because it contemplated no further action by the probate court. Thus, the court of appeals held that the probate court's dismissal of the adoption petition, which was entered more than ninety days after the final decree, was void because the probate court lost jurisdiction to do so under Rule 60(b).

On April 17, 2000, approximately one month after the court of appeals's ruling, Michael filed a petition to set aside the adoption. In his petition, Michael asserted that he had not received notice prior to the order of adoption. He alleged that Reneé had committed a fraud upon him and upon the probate court because she had knowledge of Michael's correct address at the time of the adoption. He further alleged that since the entry of the adoption decree, Kevin had not taken custody of James, and that the child had remained in Michael's custody for the previous two years. Michael asked that the adoption be declared void.

A hearing was held on May 15, 2000, after which the probate court issued an order setting aside the adoption on the grounds of fraud and a lack of notice to Michael. Relying on this court's decision in *McKinney v. Ivey*, 287 Ark. 300, 698 S.W.2d 506 (1985), the probate court found that the service of process did not meet the requirements set forth in Ark. R. Civ. P. 4(e). The court found that the warning order published in the local newspaper did not constitute valid service, because it was not accompanied by an affidavit stating that a diligent inquiry had been made and that the defendant's whereabouts were unknown. *See* Rule 4(f). Indeed, the court found that there was clear and convincing evidence showing that Kevin and Reneé had practiced fraud upon Michael and the probate court by intentionally failing to serve notice on Michael, even though they knew his correct address and whereabouts. The court found further that, contrary to the assertions in the adoption petition, at no time had Michael abandoned the child, such that he would not have been entitled to notice prior to the adoption.

For reversal, Kevin argues that Michael's petition to set aside the adoption was untimely under Ark. Code Ann. § 9-9-216(b) (Repl. 1998), because it was not brought within one year from the date of the adoption decree. Although he does not argue that the warning order published in the local newspaper complied with the notice and service requirements in Rule 4 and Ark. Code Ann. § 9-9-212(f) (Repl. 1998), he contends that Michael had actual notice of the adoption within one year from the date of the decree. Thus, Kevin asserts that once the one-year period expired, Michael was

barred from challenging the adoption on any ground, including fraud and lack of notice.

 We review probate proceedings *de novo*, but we will not reverse the decision of the probate court unless it is clearly erroneous. *Dillard v. Nix*, 345 Ark. 215, 45 S.W.3d 359 (2001); *Blunt v. Cartwright*, 342 Ark. 662, 30 S.W.3d 737 (2000). When reviewing the proceedings, we give due regard to the opportunity and superior position of the probate judge to determine the credibility of the witnesses. *Id.* Similarly, we review issues of statutory construction *de novo*, as it is for this court to determine what a statute means. *Burch v. Griffe*, 342 Ark. 559, 29 S.W.3d 722 (2000). Thus, we are not bound by the trial court's construction; however, in the absence of a showing that the trial court erred, its interpretation will be accepted as correct on appeal. *Id.* We begin our analysis of this appeal by viewing the relevant statutes.

Section 9-9-212 provides in pertinent part:

> (a) Before any hearing on a petition, the period in which the relinquishment may be withdrawn under § 9-9-220 or in which consent may be withdrawn under § 9-9-209, whichever is applicable, must have expired. No orders of adoption, interlocutory or final, may be entered prior to the period for withdrawal. After the filing of a petition to adopt a minor, the court shall fix a time and place for hearing the petition. At least twenty (20) days before the date of hearing, notice of the filing of the petition and of the time and place of hearing shall be given by the petitioner to (1) any agency or person whose consent to the adoption is required by this subchapter but who has not consented; . . . .

> (f) *Notice shall be given in the manner appropriate under rules of civil procedure for the service of process in a civil action in this state* or in any manner the court by order directs. Proof of the giving of the notice shall be filed with the court before the petition is heard. Where consent is not required, notice may be by certified mail with return receipt requested. [Emphasis added.]

Section 9-9-216(b) provides:

> Subject to the disposition of an appeal, *upon the expiration of one (1) year after an adoption decree is issued, the decree cannot be questioned by any person* including the petitioner, *in any manner upon any ground, including* fraud, misrepresentation, *failure to give any required notice,* or lack of jurisdiction of the parties or of the subject

> matter unless, in the case of the adoption of a minor, the petitioner has not taken custody of the minor or, in the case of the adoption of an adult, the adult had no knowledge of the decree within the one-year period. [Emphasis added.]

Kevin contends that because of the great need for finality in adoption cases, the one-year limitations period provided in section 9-9-216(b) outweighs any due process rights the natural parent may have where the parent has received actual notice of the adoption. Thus, Kevin asserts that even though Michael was not provided with legal notice, as required under section 9-9-212, he was nonetheless required to bring any challenge to the adoption by June 16, 1998, one year from the date that the decree was entered. Kevin's entire argument is based on his contention that Michael had timely actual notice of the adoption. We disagree.

 Notice of a petition for adoption must be provided in a timely manner to afford the natural parent an opportunity to be heard before any action is taken that would deprive the parent of his or her parental rights. This court recognized in *McKinney*, 287 Ark. 300, 698 S.W.2d 506, that such notice is a requirement of due process. There, the child's father did not receive any prior notice of the adoption proceeding. In fact, he did not become aware of the adoption until more than a year after it had been finalized. The father subsequently filed a petition to set aside the adoption on the grounds that he had received no notice and that the child's mother and purported adoptive parents had fraudulently concealed his name from the probate court and made fraudulent statements regarding his status as the father of the child. The trial court dismissed the father's petition, and this court reversed. While recognizing the importance of the considerations that led the legislature to create the one-year limitations period in section 9-9-216, this court concluded that such considerations did not outweigh the father's fundamental right of due process. This court reasoned that "it would be a denial of due process of law for the courts to hold that the adoption decree is absolutely protected from challenge." *Id.* at 302, 698 S.W.2d at 507.

The *McKinney* court relied primarily on the Supreme Court's landmark decision in *Armstrong v. Manzo*, 380 U.S. 545 (1965), wherein the Court held that a natural father cannot be deprived of his parental rights without due process of law.

> It is clear that failure to give the petitioner notice of the pending adoption proceedings violated the most rudimentary demands of

due process of law. "Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." "*An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.*"

*Id.* at 550 (citations omitted) (emphasis added).

■ Kevin acknowledges the holdings in *McKinney* and *Armstrong,* but he argues that those cases are factually distinguishable from this case, because Michael had "actual notice" of the adoption within the one-year limitations period. We disagree with this argument. Kevin is confusing notice with knowledge. It is true that Michael had knowledge of the adoption within one year from the date of the decree, but not until his parental rights had been terminated through a final decree of adoption. Such knowledge after the fact is not notice as required by due process or our adoption statutes.

This point is well illustrated in *Armstrong,* wherein the Court rejected the notion that the failure to give the father notice as contemplated by the Constitution was cured by the subsequent hearing afforded to him on his motion to set aside the adoption. The Court based its determination on the fact that the burden of proof had shifted once the adoption had been granted. The Court explained that had the natural father received notice of the pending adoption, the adoptive parents, as the moving parties, would have had the burden of proving their case, as against whatever defenses the father may have raised. Instead, because he did not receive proper notice, the father bore the burden of trying to get the judge to set aside the adoption. The Court held:

> A fundamental requirement of due process is "the opportunity to be heard." It is an opportunity which must be granted at a meaningful time and in a meaningful manner. The trial court could have fully accorded this right to the petitioner only by granting his motion to set aside the decree and consider the case anew. Only that would have wiped the slate clean. Only that would have restored the petitioner to the position he would have occupied had due process of law been accorded to him in the first place.

*Id.* at 552 (citing *Grannis v. Ordean*, 234 U.S. 385, 394 (1914)).

Consistent with the Court's holding in *Armstrong*, this court recognized in *Pender v. McKee*, 266 Ark. 18, 582 S.W.2d 929 (1979), that due process is not afforded where notice is given after a judgment has been entered. In that case, the child's natural mother, Brenda Pender, attempted to set aside the adoption on the ground that she had not been properly served with notice prior to the adoption hearing. The evidence revealed that there were defects in the service of process. Notwithstanding, the undisputed evidence demonstrated that Brenda had been notified of the pending adoption *prior* to the time that the hearing was held. Because she had received actual notice of the pending adoption, this court rejected her argument that her due process rights had been violated:

> The requirements of due process of law under [*Armstrong*, 380 U.S. 545,] were that she have notice reasonably calculated to apprise her of the pendency of the action and to afford her an opportunity to present her objections. These requirements of due process were met.
>
> We have heretofore recognized that *one who was apprised of the pendency of an action and aware of the nature of the relief sought before a judgment was rendered*, was not entitled to have the judgment vacated, whether process was served on him or not.

*Id.* at 36-37, 582 S.W.2d 929, 938 (citation omitted) (emphasis added).

It is clear from the foregoing holdings that notice of a pending adoption must be provided to the child's natural parents, when their consent is required, in a manner reasonably calculated to apprise them of the proceeding at a time prior to the entry of a judgment or decree. That was not done here. It is undisputed that Michael did not have knowledge of the adoption until after a final decree had been entered, which forever terminated his rights as James's father. Knowledge that an adoption has already occurred is not the same as notice and an opportunity to be heard prior to parental rights being terminated. Because Michael was not provided with the kind of notice contemplated by section 9-9-212 and the due process requirements of both the United States and Arkansas Constitutions, the one-year limitations period provided in section 9-9-216(b) did not bar his petition to set aside the adoption.

■■ In holding as we do in this case, we are not unmindful of the need for finality in adoptions and the strict construction that must be accorded the one-year limitations period in section 9-9-216. *See In Re: Adoption of Martindale*, 327 Ark. 685, 940 S.W.2d 491 (1997); *Martin v. Martin*, 316 Ark. 765, 875 S.W.2d 819 (1994). We are, however, equally aware that the right of a natural parent to the custody of his or her child is "one of the highest of natural rights." *Olney v. Gordon*, 240 Ark. 807, 811, 402 S.W.2d 651, 653 (1966) (quoting *Woodson v. Lee*, 221 Ark. 517, 521, 254 S.W.2d 326, 329 (1953) (quoting 2 C.J.S. *Adoption of Persons* § 57 [(1972)])). Due process requires, at a minimum, notice reasonably calculated to afford a natural parent the opportunity to be heard before his or her parental rights are terminated through adoption. Thus, before actual notice may be deemed an adequate substitute for the notice required by section 9-9-212 and Rule 4, it must be gained prior to the entry of the adoption decree. Knowledge after the decree is entered, even if it is gained within the one-year limitations period, will not suffice.

■ Finally, we cannot ignore the fact that for almost four years, since the summer of 1998, James has been in the custody of his natural father, Michael, and has lived with either Michael or Michael's mother, Dorothy. Accordingly, the need for finality in this case does not weigh in favor of upholding the 1997 adoption decree. We thus affirm the probate court's judgment in this matter.