

SLIP OPINION

Cite as 2016 Ark. 101

# SUPREME COURT OF ARKANSAS

No. CV–15–629

| | |
|---|---|
| GGNSC HOLDINGS, LLC, ET AL.<br>APPELLANTS | **Opinion Delivered** March 10, 2016 |
| V. | APPEAL FROM THE OUACHITA<br>COUNTY CIRCUIT COURT<br>[NO. CV–2011–121–6] |
| NELLIE R. LAMB, BY AND THROUGH<br>RICHARD WILLIAMS, AS GUARDIAN<br>OF THE ESTATE AND PERSON OF<br>NELLIE R. LAMB, ET AL.<br>APPELLEES | HONORABLE DAVID F. GUTHRIE,<br>JUDGE<br><br>REVERSED AND REMANDED. |

**KAREN R. BAKER, Associate Justice**

This appeal returns from our remand in *GGNSC Holdings, LLC v. Chappel*, 2014 Ark. 545, 453 S.W.3d 645. The appeal arose from the January 30, 2014 Ouachita County Circuit Court's denial of GGNSC's motion to compel arbitration of five former residents. At the time of their admission, arbitration agreements were entered by or on behalf of the following five residents: Nellie Lamb, Louise Brown, Wilma Richey, Leon Robinson, Jr., and Thomas Roche. The arbitration agreements contained the following provisions:

> It is understood and agreed by Facility and Resident that any and all claims, disputes, and controversies (hereafter collectively referred to as a "claim" or collectively as "claims") arising out of, or in connection with, or relating in any way to the Admission Agreement or any service or health care provided by the Facility to the Resident shall be resolved exclusively by binding arbitration to be conducted at a place agreed upon by the Parties, or in the absence of such an agreement, at the Facility, in accordance with the National Arbitration Forum Code of Procedure, ("NAF") which is hereby incorporated into this Agreement, and not by a lawsuit or resort to court process. This agreement shall be governed by and interpreted under the Federal Arbitration Act, 9 U.S.C. Sections 1–16.

SLIP OPINION

. . . .

In the event a court having jurisdiction finds any portion of this agreement unenforceable, that portion shall not be effective and the remainder of the agreement shall remain effective.

. . . .

**THE PARTIES UNDERSTAND AND AGREE THAT THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES, AND THAT BY ENTERING INTO THIS ARBITRATION AGREEMENT, THE PARTIES ARE GIVING UP AND WAIVING THEIR CONSTITUTIONAL RIGHT TO HAVE ANY CLAIM DECIDED IN A COURT OF LAW BEFORE A JUDGE AND A JURY, AS WELL AS ANY APPEAL FROM A DECISION OR AWARD OF DAMAGES.**

On December 19, 2011, the appellees, who are former residents of the nursing homes, special administrators, guardians, or attorneys-in-fact of former residents (for purposes of this appeal, the appellees will be collectively referred to as "Lamb") filed a class-action complaint against appellants GGNSC Holdings, LLC, and other related entities and employees of GGNSC Holdings, LLC (collectively "GGNSC"). In February 2012, GGNSC moved to compel arbitration of claims asserted by Lamb, Brown, Richey, Robinson, and Roche. On January 30, 2014, the circuit court denied the motions to compel arbitration.

In *Chappel*, we reversed and remanded the Ouachita County Circuit Court's January 30, 2014 order denying GGNSC's motion to compel arbitration because the circuit court addressed the impossibility-of-performance defense without first making the threshold finding of whether the arbitration agreements were valid. *Id*. at 8, 453 S.W.3d at 649. Specifically, we explained:

Considering the instant case in light of our most recent precedent, it is clearly more akin to the situation presented in *Bank of the Ozarks* than that presented in *Asset Acceptance.* Here, we simply do not have a blanket denial of the motion to compel. The order that is the subject of this appeal specifically addresses an issue involving impossibility of performance, a defense to a contract. After an in-depth discussion on that issue, the circuit court included a catch-all sentence that read, "The other arguments of Plaintiffs' counsel against the motion to compel arbitration are persuasive and contribute to this decision." Those other arguments raised by appellees were that there was no mutual assent because of a lack of authority on the part of those who signed the arbitration agreement and that the agreement was unconscionable.[FN4]

[FN4] Appellees do not assert that there was a lack of authority with regard to Mr. Robinson.

Clearly, appellees challenged the validity of the arbitration agreement itself and, thus, it was incumbent on the circuit court to address this threshold issue. We cannot construe the court's catch-all sentence to be a ruling on the issue of whether there was a valid agreement to arbitrate. The circuit court stated that appellees' other arguments contributed to its decision to deny the motions to compel. But, it would be illogical for this court to conclude that appellees' argument that there was no valid agreement to arbitrate contributed to the denial of the motions because there would have been no need for the court to consider the impossibility defenses. In other words, if we were to assume anything about the circuit court's ruling, we would have to assume that the court impliedly found that there was a valid agreement to arbitrate and then considered the contract defense. But, we are not allowed to presume any such ruling pursuant to our precedent in *Bank of the Ozarks.* Accordingly, we reverse and remand this matter to the circuit court.

2014 Ark. 545, at 7–8 & n.4, 453 S.W.3d at 649 & n.4.

On March 3, 2015, Lamb filed a motion to enter a proposed order and brief in support to enter proposed order. Lamb argued that four of the five arbitration agreements are invalid because the agreements lack the required element of mutual assent. Specifically, Lamb contended that the agreements of Lamb, Brown, Richey, and Roche were signed by persons who were not authorized to sign on behalf of the resident. Lamb argued that Robinson's agreement appears to be valid because he signed the agreement himself; however, Robinson's

agreement is unenforceable because it is impossible to perform and unconscionable. Further, Lamb argued that even if the arbitration agreement is valid, the motion to compel must be denied because in the event that the National Arbitration Forum ("NAF") cannot conduct the arbitration, or the NAF Code of Procedure cannot be utilized, Lamb is entitled to pursue her claims in court pursuant to NAF Rules 48(D) and (E).

On March 19, 2015, GGNSC filed its response to Lamb's motion to enter proposed order and argued that Lamb's arbitration agreement is valid because it was signed by her legal guardian. Brown, Richey, and Roche's arbitration agreements are also valid because the agreements were signed by agents acting with apparent authority. Robinson's arbitration agreement is valid because he signed the agreement himself. Further, the agreements are not unconscionable, and performance of the agreements is not impossible. Finally, NAF Rule 48 does not grant Lamb the right to litigate the dispute in court.

On June 9, 2015, the circuit court entered an amended order denying arbitration. The circuit court found that three of the five arbitration agreements were invalid because the agreements were signed by individuals who lacked authority to agree to arbitrate.[1] The circuit court concluded that Lamb's arbitration agreement is valid because Richard Williams, as guardian of the person and estate of Lamb, had the authority to bind Lamb to the arbitration agreement. The circuit court also found that Robinson's arbitration agreement was valid

---

[1]These include the agreements of: Richey, Roche, and Brown. These agreements are not the subject of the present appeal, and GGNSC challenges only the circuit court's denial of the motion to compel as to Lamb and Robinson.

SLIP OPINION

because he signed the agreement on his own behalf. However, the circuit court ruled that Lamb and Robinson's agreements were not enforceable to compel arbitration based on the defenses of impossibility of performance and unconscionability.

On June 30, 2015, GGNSC filed its notice of appeal. On July 6, Lamb filed a notice of cross-appeal. On appeal, GGNSC argues that the circuit court committed reversible error by refusing to enforce the valid arbitration agreements based on the defenses of impossibility of performance and unconscionability. On cross-appeal, Lamb argues that the circuit court erred in determining that Richard Williams, the court appointed guardian of the person and the estate of Lamb, was authorized to waive Lamb's fundamental right to a jury trial by executing an optional arbitration agreement on Lamb's behalf. Because Lamb's cross-appeal involves the threshold issue of the validity of the arbitration agreement, we must first consider Lamb's cross-appeal.[2]

Because this is a subsequent appeal to this court, this court's jurisdiction is proper pursuant to Arkansas Supreme Court Rule 1-2(a)(7)(2015). Our jurisdiction is also in accordance with Rule 2(a)(12) of the Arkansas Rules of Appellate Procedure–Civil, which permits interlocutory appeals from orders denying motions to compel arbitration. We review a circuit court's order denying a motion to compel arbitration de novo on the record. *Searcy Healthcare Ctr., LLC v. Murphy*, 2013 Ark. 463, at 3 (citing *HPD, LLC v. Tetra Techs., Inc.*, 2012 Ark. 408, 424 S.W.3d 304).

---

[2]The validity of Robinson's arbitration agreement is not at issue.

I. *Authority of Williams*

On cross–appeal, Lamb argues that the circuit court erred in its determination that Richard Williams, Lamb's son, had the authority to bind Lamb to the arbitration agreement. Specifically, Lamb argues that Arkansas law limits a guardian's authority to acts necessary to promote and protect the well-being of the person and his or her property; a guardian of the person does not have the authority to bind a ward to an arbitration agreement; and the authority of a guardian of the estate is limited to actions necessary to protect, preserve, and administer the ward's property.

In reviewing an arbitration agreement, despite the provision being subject to the Federal Arbitration Act ("FAA"), courts look to state contract law to determine whether the parties' agreement to arbitrate is valid. *Chappel*, 2014 Ark. 545, 453 S.W.3d 645. The same rules of construction and interpretation apply to arbitration clauses as apply to agreements generally. *Hart v. McChristian*, 344 Ark. 656, 42 S.W.3d 552 (2001). The construction and legal effect of a written contract to arbitrate are to be determined by the court as a matter of law. *Id.* Accordingly, we will give effect to the parties' intent as evidenced by the arbitration agreement itself. *Id.* In light of the policy favoring arbitration, such agreements will not be construed strictly but will be read to include subjects within the spirit of the parties' agreement. *Id.*

Regarding our review of the arbitration agreement at issue, in *HPD, LLC v. TETRA Techs., Inc.*, we explained,

SLIP OPINION

In deciding whether to grant a motion to compel arbitration, two threshold questions must be answered. First, is there a valid agreement to arbitrate between the parties? Second, if such an agreement exists, does the dispute fall within its scope? In answering these questions, doubts about arbitrability must be resolved in favor of arbitration. Further, the court (rather than the arbitrator) decides these questions of arbitrability, unless the parties clearly and unmistakably delegate that issue to the arbitrator. Based on the principle that arbitration is a matter of contract, the question of "who has the primary power to decide arbitrability" turns upon what the parties agreed about that matter.

2012 Ark. 408, at 6, 424 S.W.3d at 308 (internal citations omitted).

The essential elements for an enforceable arbitration agreement are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligation. *Chappel*, 2014 Ark. 545, 452 S.W.3d 645 (citing *Alltel Corp. v. Sumner*, 360 Ark. 573, 203 S.W.3d 77 (2005)).

The circuit court found that Lamb's and Robinson's arbitration agreements were valid. In considering the threshold issue of validity, the circuit court specifically found as follows:

As to Nellie Lamb, the signatory of her arbitration agreement was Richard Williams, the guardian of Ms. Lamb's person and estate, who possessed the required authority. The agreement to arbitrate is more business in nature rather than medical and within the scope of the powers of a guardianship. That agreement is therefore valid. The arbitration agreement of Leon Robinson was signed by Mr. Robinson himself and is also valid.

Turning to the first threshold issue of validity, we must determine whether Richard Williams had actual authority to bind Lamb to the arbitration agreement. *Courtyard Gardens Health & Rehab., LLC v. Quarles*, 2013 Ark. 228, at 6, 428 S.W.3d 437, 442. The burden of proving an agency relationship lies with the party asserting its existence. *Id.* at 7, 428 S.W.3d at 443. (citing *Pledger v. Troll Book Clubs, Inc.*, 316 Ark. 195, 871 S.W.2d 389 (1994)). Thus,

SLIP OPINION

here, the burden of proof lies with GGNSC.

On cross-appeal, Lamb argues that Arkansas Code Annotated sections 28-65-101 et seq. (Repl. 2012 & Supp. 2015) establishes the scope and limitations of Williams's authority to act on behalf of Lamb. Pursuant to section 28-65-105(1), a guardianship shall be "used only as necessary to promote and protect the well-being of the person and his or her property." Lamb argues that unlike the admission agreement, the arbitration agreement was not necessary to ensure that Lamb would receive needed medical care and services. To support this argument, Lamb cites to *Burch v. Griffe*, 342 Ark. 559, 29 S.W.3d 72 (2000), and argues that if the legislature had intended to vest a guardian with full, unlimited authority to take every action for a ward, it could have done so.

In response, GGNSC notes that we have said that the "basic rule of statutory construction to which all other interpretive guides defer is to give effect to the intent of the legislature." *McCoy v. Walker*, 317 Ark. 86, 89, 876 S.W.2d 252, 254 (1994) (citing *Mountain Home Sch. Dist. v. T.M.J. Builders, Inc.*, 313 Ark. 661, 858 S.W.2d 74 (1993)). GGNSC argues that section 28-65-105 is a directive to the courts as the nature, purpose and establishment of guardianships, not a delineation of a guardian's authority. Further, this section does not establish the powers and duties of a guardian or limit a guardian's authority to be "used only as is necessary to promote and protect the well-being of the person and his property." Ark. Code Ann. § 28-65-105(1)(Repl. 2012). GGNSC also contends that the General Assembly has granted guardians broad authority to act on behalf of their wards. A

guardian's powers and duties are delineated in Arkansas Code Annotated sections 28-65-301 through –323. Guardians are specifically authorized to prosecute and defend claims in the interest of the ward pursuant to section 28-65-305. Thus, GGNSC asserts that Williams acted consistent with this power when he executed the arbitration agreement on behalf of Lamb. Williams's right to select arbitration as the forum for deciding Lamb's claims was also consistent with his power to choose arbitration as the forum to resolve claims. Further, GGNSC explains that *Burch* does not support Lamb's position that a guardian only has the powers specifically enumerated by statute. Instead, GGNSC contends that *Burch* supports its position that if the legislature wanted to limit a guardian's power to enter into an arbitration agreement, it could have done so. We find GGNSC's position persuasive.

We review issues of statutory construction de novo, as it is for this court to decide what a statute means. *Stephens v. Ark. Sch. for the Blind*, 341 Ark. 939, 20 S.W.3d 397 (2000). We are not bound by the circuit court's decision; however, in the absence of a showing that the trial court erred, its interpretation will be accepted as correct on appeal. *Id*. The basic rule of statutory construction is to give effect to the intent of the legislature. *Short v. State*, 349 Ark. 492, 79 S.W.3d 313 (2002). We construe the statute just as it reads, giving the words their ordinary and usually accepted meaning. *Id*. In addition, when the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion to resort to rules of statutory interpretation. *Burnette v. State*, 354 Ark. 584, 127 S.W.3d 479 (2003).

SLIP OPINION

It is undisputed that Williams is the "Guardian of the Person and the Estate of Lamb." The November 10, 2008 letter of guardianship states that Williams "is hereby authorized to have the care and custody of and exercise control over the person and to take possession of and administer the property of [Lamb], as authorized by law." Lamb's arbitration agreement was signed by Williams on January 13, 2009.

In *Burch*, we considered Arkansas Code Annotated section 28-39-405, which governs a surviving spouse's right of election to take against the will. Section 28-39-405 provides:

> (a) The right of election of the surviving spouse is personal. It is not transferable and does not survive the surviving spouse.
>
> (b) The guardian of the estate of an incompetent surviving spouse, when authorized by the court having jurisdiction over the estate of the ward, may elect to take against the will in the ward's behalf.

Ark. Code Ann. § 28-39-405. We noted the legislature's decision to insert limiting language in this section and explained,

> We believe that this section requires a reversal of the probate court's order, as the decisive factor in this case is that Robert died before a proper election was made on his behalf.
>
> The record reflects that Appellees filed the election, on Robert's behalf, to take against Aileen's will on April 12, 1999, prior to Robert's death. It is undisputed, however, that Appellees never sought or received the probate court's authorization prior to the time that they purported to make the election. It is also undisputed that Appellees did not seek the probate court's authorization until after Robert's death. Accordingly, their failure to seek and obtain court authorization during Robert's lifetime nullifies the election.

*Burch*, 342 Ark. at 563, 29 S.W.3d at 725. Here, the fact that the legislature chose to insert such limiting language in § 28-38-405 supports GGNSC's position. Stated differently, if the

10

SLIP OPINION

legislature had wished to limit a guardian's ability to enter into arbitration agreements, it clearly could have inserted language limiting a guardian's ability to enter into such agreements.

Our decision in *Carmody v. Raymond James Financial Services, Inc.*, 373 Ark. 79, 281 S.W.3d 721 (2008), also supports GGNSC's position. In *Carmody*, we affirmed the validity of an arbitration agreement signed by a guardian. In arriving to this conclusion, we noted that Arkansas Code Annotated section 28-65-301(a)(3) provides that "[t]he guardian of the person shall be entitled to the custody of the ward but shall not have the power to bind the ward or his or her property." Thus, we concluded that the plain language of section 28-65-301(a)(3) indicates that the guardian of the person does not have the authority to bind the ward or his property. 373 Ark. at 84, 281 S.W.3d at 726. Next, we turned to section 28-65-301(b), which addresses the duties of the guardian of the estate. This section provides in pertinent part, it shall be the duty of the guardian of the estate:

> (A) To exercise due care to protect and preserve it;
> (B) To invest it and apply it as provided in this chapter;
> (C) To account for it faithfully;
> (D) To perform all other duties required of him or her by law; and
> (E) At the termination of the guardianship, to deliver the assets of the ward to the persons entitled to them.

Ark. Code Ann. § 28-65-301(b)(1). Noting the General Assembly's established public policy in favor of arbitration, we held that a guardian of the estate has the authority to bind a ward to an agreement to arbitrate disputes arising from the above duties. 373 Ark. at 84, 281 S.W.3d at 726. However, our decision did not end there. We further held that "if the legislature had intended to prohibit a guardian, on behalf of the estate, from entering a

11

SLIP OPINION

contract containing an arbitration agreement, it could have expressly done so, but it did not."

*Id.* at 87, 281 S.W.3d at 728.

In light of our public policy favoring arbitration and the legislature's decision to refrain from specifically limiting a guardian's ability to enter into arbitration agreements, we hold that Williams, as the "Guardian of the Person and the Estate of Lamb," possessed the authority to enter into the arbitration agreement on behalf of Lamb. Thus, the record demonstrates that the arbitration agreement at issue is valid and encompasses the dispute at issue.

## II. *Impossibility of Performance*[3]

Next, GGNSC and Lamb dispute whether the unavailability of the NAF renders the arbitration agreement impossible to perform. GGNSC asserts that the circuit court erred in finding that the arbitration agreement was unenforceable. Specifically, GGNSC argues that the circuit court's decision to deny its motion to compel arbitration based on impossibility of performance should be reversed. In response, Lamb argues that because the NAF is unavailable to arbitrate the dispute, the arbitration agreement is unenforceable based on the defense of impossibility of performance. This precise issue was recently addressed by this

---

[3]As a separate point on appeal, GGNSC takes issue with the circuit court's finding that Rules 48(D) and (E) permit the residents to assert their claims in court. In response, Lamb argues that the circuit court correctly ruled that the arbitration agreement does not require the residents to arbitrate their disputes, but that Rule 48 allows the residents to sue in court. Further, Lamb argues that "it is impossible for the NAF to arbitrate this dispute as a result of the consent judgment with the Minnesota Attorney General." Thus, despite this argument being addressed as a separate point on appeal, the crux of Lamb's argument involves impossibility. As explained below, we reject Lamb's argument for the reasons set forth in *Courtyard Gardens Health & Rehabilitation, LLC v. Arnold*, 2016 Ark. 62, 11–12.

SLIP OPINION

court in *Courtyard Gardens Health & Rehabilitation, LLC v. Arnold*, 2016 Ark. 62. In *Arnold*,

we held that the same arbitration agreement at issue in the present case is "not unenforceable

based on the defense of impossibility of performance. Further, the integral–term versus

ancillary–logistical–concern test employed by the parties supports this court's decision that

Arnold has failed to satisfy her burden of proving the defense of impossibility of performance."

*Id.* at 5–6. Pursuant to our recent holding in *Arnold*, and based on the reasons discussed in

that case, we also hold that the arbitration agreement here is not impossible to perform. Thus,

we reverse and remand the circuit court's order denying GGNSC's motion to compel

arbitration based on the defense of impossibility of performance.

### III. *Unconscionability*

For its final point on appeal, GGNSC argues that the circuit court erred in finding that

the arbitration agreements were both substantively and procedurally unconscionable. In

*LegalZoom.com, Inc. v. McIllwain*, we noted the difference between the two unconscionability

concepts and explained:

> While "unconscionability" is not precisely defined in the law, one of the earliest
> applications of the doctrine described an unconscionable contract as one that "no man
> in his senses and not under delusion would make on the one hand, and . . . no honest
> and fair man would accept on the other." James J. White & Robert S. Summers,
> *Handbook of the Law Under the Uniform Commercial Code* § 4-1 (3d ed.1988) (quoting
> *Earl of Chesterfield v. Janssen* (1750) 28 Eng. Rep. 82, 100 (K.B.). In essence, to be
> unconscionable, a contract must oppress one party and actuate the sharp practices of
> the other.
>
> In White & Summers, the concept of unconscionability is analyzed in terms of
> "procedural unconscionability" and "substantive unconscionability." Procedural
> unconscionability encompasses contracts where there is an absence of meaningful
> choice on the part of one of the parties together with contract terms that are
> unreasonably favorable to the other party. *Id.* § 4-3. Substantive unconscionability
> generally involves excessive price or restriction of remedies. *Id.* §§ 4-4-4-6.

13

2013 Ark. 370, at 6–7, 429 S.W.3d 261, 264.

The burden of proving unconscionability is upon the party asserting the defense. *Poff v. Brown*, 374 Ark. 453, 288 S.W.3d 620 (2008). Thus, pursuant to *Poff*, Lamb bears the burden of demonstrating unconscionability. We have stated that, in assessing whether a particular contractual provision is unconscionable, the courts review the totality of the circumstances surrounding the negotiation and execution of the contract. *Jordan v. Diamond Equip. & Supply Co.*, 362 Ark. 142, 156, 207 S.W.3d 525, 535 (2005). Two important considerations are whether there is a gross inequality of bargaining power between the parties and whether the aggrieved party was made aware of and comprehended the provision in question. *Id.*

As to procedural unconscionability, GGNSC argues that neither the terms nor the negotiation and execution of the arbitration agreement render it procedurally unconscionable. In response, Lamb argues that the arbitration agreement is procedurally unconscionable because it is a form document prepared by GGNSC, the terms are nonnegotiable, and it is a preprinted document that leaves no opportunity for negotiation. Further, Lamb argues that there is substantial disparity in the bargaining power of the parties. Specifically, Lamb argues that the residents were unaware that they were being asked to agree to arbitrate in front of GGNSC's business partner, the NAF, who was committed to ensuring that GGNSC maintained control over the arbitration process.

As to procedural unconscionability, the circuit court found:

The arbitration contract was a form document prepared by [GGNSC]. There was no negotiation between the unequal parties as to its terms or conditions at the time the agreements were signed.

14

To support her position that the arbitration agreement is procedurally unconscionable, Lamb cites this court to a court of appeals opinion, *Associated Press v. Southern Arkansas Radio Co.*, 34 Ark. App. 211, 809 S.W.2d 695 (2001). In *Associated Press*, the court of appeals affirmed the circuit court's finding of unconscionability where the agreement was a preprinted form; the provision relating to loss of future revenue was harsh in operation; the agreement was neither read nor understood by the appellee; the agreement was executed when the appellee was already in default under its terms; and there was a substantial disparity in the relative bargaining power of the parties. 34 Ark. App. at 215, 809 S.W.2d at 697.

Although the arbitration agreement at issue in the present case is a preprinted form, the arbitration agreement is clearly distinguishable from the agreement in *Associated Press*. The title of the arbitration agreement here clearly states that the agreement was "NOT A CONDITION OF ADMISSION–READ CAREFULLY." The arbitration agreement also contains the following provision:

> **THE PARTIES UNDERSTAND AND AGREE THAT THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES, AND THAT BY ENTERING INTO THIS ARBITRATION AGREEMENT, THE PARTIES ARE GIVING UP AND WAIVING THEIR CONSTITUTIONAL RIGHT TO HAVE ANY CLAIM DECIDED IN A COURT OF LAW BEFORE A JUDGE AND A JURY, AS WELL AS ANY APPEAL FROM A DECISION OR AWARD OF DAMAGES.**

The last paragraph of the agreement states that the "undersigned certifies that he/she has read this Arbitration Agreement and that it has been fully explained to him/her, that he/she understands its contents, and has received a copy of the provision and that he/she is the Resident, or a person duly authorized by the Resident or otherwise to execute this agreement

15

and accept its terms."

Other than bare allegations of inequality of bargaining power and failure to comprehend the above terms, Lamb has failed to demonstrate that the terms of the agreement and the method of negotiation and execution were procedurally unconscionable. Further, there is no evidence that the parties failed to comprehend the terms of the agreement. As noted above, the arbitration agreement contains a signature directly below the sentence that states that the "undersigned certifies that he/she has read this Arbitration Agreement and that it has been fully explained to him/her, that he/she understands its contents, and has received a copy of the provision and that he/she is the Resident, or a person duly authorized by the Resident or otherwise to execute this agreement and accept its terms." Thus, by signing the agreement, it appears the parties acknowledged that they comprehended the agreement. In considering the totality of circumstances, Lamb has not met the burden of demonstrating that the arbitration agreement is procedurally unconscionable.

Finally, GGNSC argues that the NAF fee schedule is not substantively unconscionable, and the circuit court's ruling on this issue violates established public policy in favor of arbitration. In response, Lamb argues that the fees adopted by the NAF Code renders the agreement substantively unconscionable and unconstitutional.

As to substantive unconscionability and constitutionality of the arbitration agreement, the circuit court found:

> The costs of arbitration are unreasonable and unconscionable. While courts of law are established at public expense for access to justice, arbitration costs must be paid by the participants, significantly on the front end of the case. This produces a disparate impact on lower income participants and operates as a deterrent to the filing of claims and, therefore, a denial of justice. Prohibitive costs are contrary to the constitutional

16

declaration that every person is entitled to redress of wrong through ". . . justice freely, and without purchase." (Constitution of Arkansas, Article 2, § 13). These factors dictate a denial of the motions to compel Ms. Lamb and Mr. Robinson to arbitrate their claims.

The circuit court's clear disapproval of arbitration costs conflicts with this court's determination that, as a matter of public policy, arbitration is strongly favored and is looked upon with approval by the courts as a less expensive and more expeditious means of settling litigation and relieving docket congestion. *Hart*, *supra*. Thus, Lamb has not met the burden of demonstrating that the arbitration agreements are substantively unconscionable or unconstitutional.

Although the dissent contends that our decision regarding unconscionability provides a "truncated analysis [which] violates our mandate to treat arbitration agreements the same as any other contract," this statement is inaccurate. The court has rendered a thorough legal and factual opinion supported by well-established legal precedent. Further, the dissent states that our decision "will ultimately eviscerate the right to trial by jury guaranteed by our constitution." Though exceedingly dramatic, this statement is also false. While our decision in no way infringes on the constitutional right to trial by jury, it does recognize that parties are free to contract to resolve their disputes by arbitration. Finally, the dissent's analysis begs the question: If the findings of unconscionability are sufficient in the present case, would any contract for arbitration ever be enforceable? We think not. The erroneous standard employed by the dissent would thus result in an interference with the parties' constitutional right to contract. *See Leep v. St. Louis, I.M. & S. Ry. Co.*, 58 Ark. 407, 25 S.W. 75 (1894) (the right of individuals to contract is inalienable and guaranteed by the state constitution).

Based on our recent decision in *Courtyard Gardens Health & Rehab., LLC v. Arnold*, 2016 Ark. 62, and in light of our established public policy in favor of arbitration, we hold that the circuit court erred in denying GGNSC's motion to compel arbitration based on the defenses of impossibility of performance and unconscionability. We reverse and remand for the entry of an order compelling arbitration.

Reversed and remanded.

DANIELSON and WYNNE, JJ., dissent.

**PAUL E. DANIELSON, Justice, dissenting.** I respectfully but strongly dissent. The majority's decision in this case is wrong; more important, it sets bad precedent that, in my view, will ultimately eviscerate the right to trial by jury guaranteed by our constitution. *See* Ark. Const. art. 2, § 7.

First, for the same reasons stated in my dissent in *Courtyard Gardens Health & Rehabilitation, LLC v. Arnold*, 2016 Ark. 62, I disagree with the majority's conclusion that the arbitration agreements at issue here were not impossible to perform. As I opined in that case, the designation of the National Arbitration Forum ("NAF") was an integral term of the parties' agreements; therefore, the unavailability of the NAF rendered the agreements impossible to perform and, consequently, unenforceable.

Second, I cannot agree with the majority's conclusion on the issue of unconscionability, as its analysis is flawed. A careful reading of the majority opinion reveals only one basis for its holding that the circuit court erred in finding the arbitration agreements unconscionable, and that is our public policy favoring arbitration. This truncated analysis violates our mandate to treat arbitration agreements the same as any other contract. *See, e.g.,*

18

SLIP OPINION

*Alltel Corp. v. Rosenow*, 2014 Ark. 375 (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)).

Our framework for reviewing arbitration disputes is well settled. The threshold inquiry is whether a valid agreement to arbitrate exists. *See, e.g.*, *Bank of the Ozarks, Inc. v. Walker*, 2014 Ark. 223, 434 S.W.3d 357. If a valid agreement to arbitrate exists, then we must determine whether the dispute falls within the scope of the agreement. *See id.* Even if an arbitration agreement exists and the dispute falls within the scope of the agreement, a court may still declare an arbitration agreement unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* at 5, 434 S.W.3d at 360 (citing *BDO Seidman, LLP v. SSW Holding Co., Inc.*, 2012 Ark. 1, at 13, 386 S.W.3d 361, 370 (quoting Federal Arbitration Act, 9 U.S.C. § 2)). "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." *Id.* at 5, 434 S.W.3d at 360 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

Importantly, although an arbitration provision may be subject to the Federal Arbitration Act, courts look to state contract law to decide whether the parties' agreement to arbitrate is valid. *See id.*; *Reg'l Care of Jacksonville, LLC v. Henry*, 2014 Ark. 361, 444 S.W.3d 356. In Arkansas, the same rules of construction apply to arbitration agreements as apply to agreements in general. *See Walker*, 2014 Ark. 223, 434 S.W.3d 357. As this court has observed, "[t]he [United States] Supreme Court has acknowledged that whether the arbitration clause itself is unenforceable based on a generally applicable contract defense, such as unconscionability, is a decision for the court (not the arbitrator) to make, and in doing so,

19

*it must apply state contract law.*"  *LegalZoom.com, Inc. v. McIllwain*, 2013 Ark. 370, at 7, 429 S.W.3d 261, 264–65 (emphasis added) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)).

Thus, to be clear, we must apply state contract law in assessing the validity and enforceability of an arbitration agreement.  The majority's opinion today utterly fails to do that; instead, it relies solely on our public policy favoring arbitration.  We have historically cited that policy as part of our analysis, but it has not been—and should not be—the extent of our analysis.  As we have often stated, in determining whether a valid and enforceable arbitration agreement exists, "doubts about arbitrability must be resolved in favor of arbitration."  *HPD, LLC v. TETRA Techs., Inc.*, 2012 Ark. 408, at 6, 424 S.W.3d 304, 308. The United States Supreme Court has held similarly with respect to the national policy favoring arbitration expressed in the Federal Arbitration Act:

> The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).  The majority's opinion in this case goes far beyond resolving any doubts in favor of arbitration. It rubber-stamps the arbitration agreements before it based simply on our policy favoring arbitration.  This begs the question: Going forward, could there ever be an arbitration agreement the majority determines to be invalid or unenforceable?  If today's decision is any indication, the answer to that question is no.

This court has previously observed that the national policy favoring arbitration is not

a requirement that arbitration agreements be elevated above other types of contracts. *See, e.g.*, *Alltel*, 2014 Ark. 375. By enacting section 2 of the Federal Arbitration Act, "Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed 'upon the same footing as other contracts.'" *Doctor's Assocs., Inc.*, 517 U.S. at 687 (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974)). The majority has singled out arbitration agreements for special status instead, such that they need not be scrutinized as contracts at all. This approach is misguided.

For these reasons, I dissent.

WYNNE, J., joins in this dissent.

*Hardin, Jesson & Terry, PLC*, by: *Kirkman T. Dougherty*, *Jeffrey W. Hatfield*, and *Kynda Almefty*; *Dechert, LLP*; by: *H. Joseph Escher III*; *Eugene D. Bramblett*; and *Shook, Hardy & Bacon, LLP*, by: *A. Bradley Bodamer*, for appellants.

*Campbell Law Firm, P.A.*, by: *H. Gregory Campbell*; *Ludwig Law Firm, PLC*, by: *Gene A. Ludwig*; *Reddick Moss, PLLC*; by: *Brian D. Reddick* and *Matthew D. Swindle*; and *Marks, Balette & Giessel, P.C.*, by: *David Marks*, for appellees.