N. MARK KLAPPENBACH, Judge
This is an interlocutory appeal concerning the denial of a motion to compel arbitration. Appellants are Hickory Heights Health and Rehab, LLC; Central Arkansas Nursing Centers, Inc.; Nursing Consultants, Inc. d/b/a Professional Nursing and Rehabilitation Services; Tina Lynette Beard, individually and as nursing home administrator for Hickory Heights Health and Rehab, LLC; Michael S. Morton; and John Doe Defendants 1-10 (collectively "Hickory Heights"). Appellee is Mabel Keller Cook ("Mabel"), an elderly woman who was a resident for a few months in 2015 at a Hickory Heights skilled-nursing facility while she recovered from a fractured hip. In 2017, Mabel filed a lawsuit in circuit court against Hickory Heights, and Hickory Heights filed a motion to compel her causes of action to be heard in arbitration, which the trial court denied. Hickory Heights appeals the denial of its motion. We affirm.
We begin with a more expansive view of the undisputed facts prior to our legal analysis. Mabel had a durable power of attorney that she executed in February 2014 appointing Charles A. Cook to act as her attorney-in-fact. In June 2015, Mabel's daughter Ethel Cook signed an Admission Agreement and an Arbitration Agreement as the "Responsible Party" upon Mabel's admission into the Hickory Heights facility.
The Arbitration Agreement recited that it was "an addendum to and part of the Admission Agreement" and "a condition of admission" that "governs the resolution of claims." The Arbitration Agreement set forth that "[t]he Resident and/or Responsible Party and the Facility shall be collectively referred to as the 'Parties.' " The terms "Resident and/or Responsible Party" are used throughout both documents to define rights and responsibilities among the parties. The Arbitration Agreement recited that "any and all claims, disputes, and controversies ... shall be resolved exclusively by binding arbitration and not by a lawsuit or resort to court process." The Admission Agreement begins as follows:
This Admission Agreement includes the terms and conditions agreed by____________, the undersigned resident, Ethel Cook, your Responsible Party, and Hickory Heights Health & Rehab the Nursing Facility ("Facility"), in your request for the admission of Mabel Cook (Resident Name) to the Facility for medical, nursing, and personal care.
*289 Both the Admission Agreement and the Arbitration Agreement contain a definition of "Responsible Party" as follows:
Your Responsible Party is your legal guardian, if one has been appointed, your attorney-in-fact, if you have executed a power of attorney, or some other individual or family member who agrees to assist the Facility in providing for your health, care and maintenance.
The Arbitration Agreement and the Admission Agreement provide signature lines for the "Resident," the "Responsible Party," and the "Facility Representative." Ethel signed the Arbitration Agreement listing her relationship to Mabel as "daughter," and a Hickory Heights representative signed, but Mabel did not sign. Notably, at the end of the Arbitration Agreement just below the signature lines is the following language:
____ (Check if applicable): A copy of my guardianship papers, durable power of attorney or other documentation has been provided to the Facility and is attached.
This space was left blank.
The Admission Agreement further defined a "Responsible Party" to include "a person who manages, uses, controls, or otherwise has legal access to Resident's income or resources that legally may be used to pay Resident's share of cost or other charges not paid by the Arkansas Medicaid Program or any other source." Ethel signed her name as the "Responsible Party" on the Admission Agreement, and a Hickory Heights representative signed as well, but Mabel did not sign this document's signature line for the "Resident."[1]
In May 2017, Mabel filed a lawsuit against Hickory Heights, claiming that during her approximately three months' stay while she recovered from a broken hip, she was sexually assaulted in the facility. Mabel's complaint asserted negligence, medical negligence, and breach-of-contract theories against Hickory Heights. Hickory Heights responded to the lawsuit by filing a motion to compel arbitration based on the documents signed by Ethel. Hickory Heights argued (1) that Mabel's causes of action fell within the ambit of the arbitration provision and (2) that although Mabel did not sign the documents, Ethel did so and bound her mother as the third-party beneficiary of those contracts. Mabel opposed the motion, arguing that Ethel did not have Mabel's power of attorney; that Ethel signed only in an attempt to be Mabel's representative but lacked authority to bind her mother; and that Ethel did not sign in her individual capacity so that the third-party-beneficiary doctrine did not apply. The trial court summarily denied the motion in a one-page order without explaining its reasoning.[2] Hickory Heights appeals, asserting that the trial court erred because the third-party-beneficiary doctrine mandates that Mabel's causes of action be resolved in arbitration.
We review a trial court's order denying a motion to compel arbitration de novo on the record.
*290 Courtyard Gardens Health & Rehab., LLC v. Quarles , 2013 Ark. 228, 428 S.W.3d 437. Arbitration is simply a matter of contract between parties. Id. Whether a dispute should be submitted to arbitration is a matter of contract construction, and we look to the language of the contract that contains the agreement to arbitrate and apply state-law principles. Id. The same rules of construction and interpretation apply to arbitration agreements as apply to agreements generally; thus, we will seek to give effect to the intent of the parties as evidenced by the arbitration agreement itself. Id. Finally, the construction and legal effect of an agreement to arbitrate are to be determined by this court as a matter of law. Id. In deciding whether to grant a motion to compel arbitration, two threshold questions must be answered. First, is there a valid agreement to arbitrate between the parties? Second, if such an agreement exists, does the dispute fall within its scope? GGNSC Holdings, LLC v. Lamb By & Through Williams , 2016 Ark. 101, 487 S.W.3d 348. In answering these questions, doubts about arbitrability must be resolved in favor of arbitration. Id. We are also guided by the legal principle that contractual agreements are construed against the drafter. Carter v. Four Seasons Funding Corp. , 351 Ark. 637, 97 S.W.3d 387 (2003).
Undoubtedly, Mabel's lawsuit falls within the scope of the arbitration agreement. The pointed question in the present appeal is whether Mabel is bound by the arbitration agreement by virtue of Ethel's having signed the agreement. Mabel contends that Ethel signed in solely a representative capacity for her but lacked the authority to act as a representative on her behalf. Mabel contends, therefore, that she is not bound by the arbitration agreement. Hickory Heights contends that Ethel signed the arbitration agreement in her individual capacity, not in a representative capacity, and that Mabel was the clearly intended beneficiary of those contracts. Hickory Heights contends this means that Mabel is a third-party beneficiary of the contracts and is bound to their terms requiring arbitration.
Generally, the terms of an arbitration contract do not apply to those who are not parties to the contract. Bigge Crane & Rigging Co. v. Entergy Ark., Inc. , 2015 Ark. 58, 457 S.W.3d 265 ; Amer. Ins. Co. v. Cazort , 316 Ark. 314, 871 S.W.2d 575 (1994). In Arkansas, the presumption is that parties contract only for themselves; thus, a contract will not be construed as having been made for the benefit of a third party unless it clearly appears that such was the intention of the parties. Bigge Crane , supra ; Elsner v. Farmers Ins. Group, Inc. , 364 Ark. 393, 220 S.W.3d 633 (2005).
In order to apply the third-party-beneficiary doctrine under Arkansas law, there must be an underlying valid agreement between two parties, and there must be evidence of a clear intention to benefit a third party. See Progressive Eldercare Servs.-Chicot, Inc. v. Long , 2014 Ark. App. 661, 449 S.W.3d 324. The salient question here is whether Ethel signed the documents in her individual capacity or in a representative capacity. We hold that there is ambiguity in this contract on the issue of whether Ethel signed these documents in an attempt to be a representative on behalf of Mabel or in her individual capacity. With that ambiguity, we construe the agreement against the drafter and conclude that Ethel attempted to act in a representative capacity. Lacking authority to so act, there is no valid underlying contract to enforce against Mabel.
Although these documents recite that Ethel signed as "Responsible Party" and not as the resident's "Representative," the *291 definition of "Responsible Party" in these documents can reasonably be construed to indicate that such authority is being asserted:
Your Responsible Party is your legal guardian, if one has been appointed, your attorney-in-fact, if you have executed a power of attorney, or some other individual or family member who agrees to assist the Facility in providing for your health, care and maintenance.
The Arbitration Agreement requests documentation to support the asserted authority on which the person claims to be the "Responsible Party." Mabel did not have a legal guardian, but she did have a durable power of attorney vested in Charles A. Cook. Mr. Cook was the person who possessed legal authority and who was available to be the "Responsible Party." Ethel did not possess legal authority to bind her mother in a representative capacity, which is an undisputed fact.
Other cases on this topic reflect a consistent line of reasoning that family members do not possess the authority to bind the resident when that person attempts to act in a representative capacity. In Progressive Eldercare Servs.-Chicot, Inc. v. Long , 2014 Ark. App. 661, 449 S.W.3d 324, Mrs. Long signed admission and arbitration documents at the time her husband was admitted to Progressive's facility. When a lawsuit was filed regarding the care Mr. Long received, Progressive filed a motion to compel arbitration. The trial court found that the documents had been clearly designed to be signed by the "Patient or Legal Representative," and Progressive had argued that Mrs. Long was her husband's "representative." In Progressive's appeal, our court agreed that the documents were signed by Mrs. Long in a representative capacity, that Mrs. Long lacked the authority to execute these documents on her husband's behalf, and that consequently there was no binding arbitration agreement. Id. at 2, 449 S.W.3d at 325. Because there was an attempt to execute in a representative capacity, the third-party beneficiary-doctrine did not have to be addressed as there was no basis to hold that Mrs. Long signed the forms in an individual capacity.
In Courtyard Gardens Health & Rehabilitation, LLC v. Quarles , 2013 Ark. 228, 428 S.W.3d 437, our supreme court held that when Mr. Quarles signed admission and arbitration agreements on his mother's entry into a nursing home, he lacked authority as "Responsible Party" to be considered her agent. The supreme court held that Mr. Quarles, lacking such authority, could not bind his mother to arbitration with the nursing home. In the present appeal, there is no dispute that Ethel, also signing as a "Responsible Party" for her mother, lacked the authority to act as her mother's agent or representative in order to bind her mother to arbitration.
In Broadway Health & Rehab, LLC v. Roberts , 2017 Ark. App. 284, 524 S.W.3d 407, Ms. Roberts signed admission documents for her mother's admission into a nursing facility. The documents required the signature of the resident or the "Resident Representative," and it required a check mark to indicate the basis of authority: a power of attorney, an appointed guardian, or "other." The documents indicated that the first two authorities were to be supported by an attached document and that the "other" authority was to be accompanied by an explanation. Ms. Roberts checked the box marked "other" and listed herself as "daughter." The facility appealed the denial of its motion to compel arbitration. Our court held that Ms. Roberts lacked authority to bind her mother to the arbitration agreement in an attempt to act as her mother's agent. Our court further *292 held that the third-party-beneficiary doctrine was inapplicable:
Two elements are necessary to apply the third-party-beneficiary doctrine: there must be an underlying valid agreement between two parties and there must be evidence of a clear intention to benefit a third party. Progressive Eldercare Servs.-Chicot, Inc. v. Long , 2014 Ark. App. 661, at 4, 449 S.W.3d 324, 327. The first element, a valid agreement between Ms. Roberts and Broadway, has not been shown to exist. The only evidence is the agreement itself, in which Ms. Roberts clearly indicated that she did not sign in her individual capacity. Ms. King was listed as the resident on the arbitration agreement above Ms. Roberts's signature. Under the request for the basis of Ms. Roberts's authority to sign the document, Ms. Roberts indicated "Daughter." The doctrine does not apply.
Id. at 7, 524 S.W.3d at 412.
In Pine Hills Health & Rehabilitation, LLC v. Talley , 2018 Ark. App. 131, 546 S.W.3d 492, our court held that a daughter could not bind her mother to arbitration by signing documents as "Responsible Party," listing herself as "daughter," prior to her mother's admission into the Pine Hills facility. There, the daughter did not check the space to indicate that "[a] copy of my guardianship papers, durable power of attorney or other documentation, has been provided to the Facility and is attached." Our court upheld the trial court's conclusion that the daughter did not intend to sign the documents in an individual capacity, noting that the agreement stated that it was between the facility and "the Resident or the Responsible Party." Our court held that there was consequently no valid agreement between the daughter and the facility; thus, the third-party-beneficiary doctrine did not apply.
In the present appeal, the parties to the arbitration agreement are recited to be the facility, and "The Resident and/or Responsible Party." Because there is no clear indication anywhere in this agreement to demonstrate whether Ethel was signing in an individual capacity or in a representative capacity, we hold that there is ambiguity in the agreement that must be construed against the drafter of the agreement.[3]
"[O]ur laws require that if uncertainty or ambiguity exists within the terms of a contract, or if it is susceptible to more than one reasonable construction, then the courts must construe the contract most strongly against the party who drafted it." Price v. Willbanks , 2009 Ark. App. 849, at 6, 374 S.W.3d 28, 32. Therefore, we construe this contract most strongly against Hickory Heights and affirm the trial court's refusal to compel arbitration.
Affirmed.
GLADWIN and BROWN, JJ., agree.

There is no indication in the record that Mabel was incapacitated in any way at the time she was admitted into Hickory Heights.

"Findings of fact and conclusions of law are unnecessary on decisions of motions under these rules." Ark. R. Civ. P. 52(a). Although it may be the better practice for the circuit court to make findings on motions, the court's failure to do so is not error. Peterson v. Davis , 2012 Ark. App. 166, 2012 WL 559935. Unless the contrary can be shown, we presume that the circuit court acted properly and made such findings of fact as were necessary to support its judgment. Curry v. Pope Cty. Equalization Bd. , 2011 Ark. 408, 385 S.W.3d 130 ; Wyatt v. Wyatt , 2018 Ark. App. 177, 545 S.W.3d 796.

Hickory Heights refers us to federal district court opinions that interpret a similar contract more in line with its position. See , e.g. , Northport Health Servs. of Ark., LLC v. Cmty. First Tr. Co. , 2014 WL 217893 (W.D. Ark. Jan. 21, 2014) ; Northport Health Servs. of Ark., LLC v. Rutherford , 2009 WL 10673107 (W.D. Ark. March 17, 2009). Decisions of the federal courts, however, are not binding on this court. See Dickinson v. SunTrust Nat'l Mortg. Inc. , 2014 Ark. 513, 451 S.W.3d 576 ; Larry Hobbs Farm Equip., Inc. v. CNH Am. , LLC , 375 Ark. 379, 291 S.W.3d 190 (2009) ; Sheridan v. State , 368 Ark. 510, 247 S.W.3d 481 (2007).