# United States Court of Appeals

## For the Eighth Circuit

_____

No. 18-2459

_____

Northport Health Services of Arkansas, LLC, doing business as Covington Court Health and Rehabilitation Center; NHS Managment, LLC; Northport Health Services, Inc.

*Plaintiffs - Appellees*

v.

Mark Wesley Posey, Individually and as Special Administrator of the Estate of Clyde Wesley Posey, and on Behalf of the Wrongful Death Beneficiaries of Clyde Wesley Posey

*Defendant - Appellant*

------------------------------

Arkansas Trial Lawyers Association; AARP; AARP Foundation

*Amici on Behalf of Appellant(s)*

Arkansas Health Care Association; American Health Care Association; National Center for Assisted Living

*Amici on Behalf of Appellee(s)*

_____

Appeal from United States District Court
for the Western District of Arkansas - Ft. Smith

_____

Submitted: March 7, 2019
Filed: July 23, 2019

_____

Before BENTON, MELLOY, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Representing the estate of his deceased father, Clyde Posey, Mark Posey appeals the district court's adverse grant of summary judgment in his wrongful death action against Northport Health Services of Arkansas, LLC (Northport).  Having jurisdiction pursuant to 28 U.S.C. § 1291, we reverse.

On September 2, 2004, Clyde and another son, Matt Posey, arrived at a residential rehabilitation center owned by Northport and sought Clyde's admission to the facility.  Clyde was experiencing disorientation, delusions, and hallucinations. As part of the admission process, Matt and Clyde received an admission agreement (the Agreement) that included an arbitration agreement and waiver of jury trial.  Both Clyde and Matt signed the Agreement; Clyde signed as the "Resident," Matt as the "Responsible Party."  The Agreement defined Responsible Party as a legal guardian, attorney-in-fact, "or some other individual or family member who agrees to assist the Facility in providing for [the resident's] health, care, and maintenance."  It also noted that "[t]he Responsible Party represents to the Facility that he or she manages, uses, directs or controls funds or assets which may be used to pay for Resident's Facility charges and/or that he or she tends to make decisions for or otherwise act on behalf of Resident."  It is undisputed that Matt was not his father's legal guardian or attorney-in-fact.

Northport admitted Clyde as a resident to its center, where he stayed until his death in January 2016. A few months later, Mark Posey, as special administrator of his father's estate, sued Northport in Arkansas state court for wrongful death. Northport filed a separate action in federal court, seeking to stay the state court action and compel arbitration of the wrongful death claim pursuant to the Agreement. The parties then filed competing motions for summary judgment. The district court denied Mark's motion and granted Northport's motion to the extent that it sought to compel arbitration. Basing its reasoning solely on the Agreement, assuming without finding that Clyde was incompetent at the time of his admission, and recognizing that Matt was not his father's legal representative, the district court used the third-party beneficiary theory to find as a matter of law that Matt, in his individual capacity, entered into a binding arbitration agreement with Northport, for which Clyde was the intended beneficiary. Therefore, the district court directed Clyde's estate to arbitrate the dispute. This appeal follows, with Mark asserting that the district court misused the third-party beneficiary theory when no underlying agreement was present between the Poseys and Northport.

"We review de novo the district court's grant of summary judgment, applying the same standards as the district court." Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). The record must indicate an absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Id. (citing Fed. R. Civ. P. 56(c)). "In the summary judgment context, we view the facts and the inferences to be drawn from them in the light most favorable to the nonmoving party." P.H. v. Sch. Dist. of Kan. City, 265 F.3d 653, 656 (8th Cir. 2001).

Though there is a "liberal federal policy favoring arbitration agreements," Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983), "[a] matter should not be sent to arbitration unless there is a valid agreement to arbitrate and the underlying dispute falls within the scope of that agreement." Telectronics Pacing Sys., Inc. v. Guidant Corp., 143 F.3d 428, 433 (8th Cir. 1998). While "any

doubts concerning the scope of arbitratable issues should be resolved in favor of arbitration[,] . . . a party who has not agreed to arbitrate a dispute cannot be forced to do so." Lyster v. Ryan's Family Steak Houses, Inc., 239 F.3d 943, 945 (8th Cir. 2001) (internal quotation marks omitted).

To determine whether a valid agreement to arbitrate exists, we look to the forum state's contract law—here, Arkansas's. Baker v. Golf U.S.A., Inc., 154 F.3d 788, 791 (8th Cir. 1998). In doing so, we "are not bound to follow the decisions of intermediate state courts," but we consider their decisions "highly persuasive" and follow them "when they are the best evidence of state law." First Tenn. Bank Nat. Ass'n v. Pathfinder Exploration, LLC, 754 F.3d 489, 490-91 (8th Cir. 2014) (internal quotation marks and alterations omitted). Arkansas lists five contractual elements for a valid arbitration agreement: "(1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations." Tyson Foods, Inc. v. Archer, 147 S.W.3d 681, 684 (Ark. 2004). Arkansas also recognizes the third-party beneficiary theory, typically used when a third-party beneficiary seeks to hold a contract party liable for breach of contract. See Perry v. Baptist Health,189 S.W.3d 54, 58 (Ark. 2004).

The Arkansas Trial Lawyers Association's amicus brief argues the district court used the third-party beneficiary doctrine inappropriately, given that the doctrine developed in common law to allow beneficiaries to enforce agreements against promisors and not vice versa. However, we need not reach this argument because the district court's use of the third-party beneficiary doctrine was premised on the conclusion that Matt Posey signed a contract with Northport in his individual capacity and that Matt did not sign as a representative for his father. Arkansas courts have repeatedly declined to find that individuals like Matt—relatives without power-of-attorney or other legal authority who admit a family member to a nursing home—possess valid authority to bind their relatives to arbitration under a third-party beneficiary theory. See Courtyard Gardens Health & Rehab., LLC v. Quarles, 428

S.W.3d 437, 444-45 (Ark. 2013);[1] Hickory Heights Health & Rehab., LLC v. Cook, 557 S.W.3d 286, 292 (Ark. Ct. App.), reh'g denied (Oct. 24, 2018); Pine Hills Health & Rehab., LLC v. Talley, 546 S.W.3d 492, 497 (Ark. Ct. App. 2018); Broadway Health & Rehab, LLC v. Roberts, 524 S.W.3d 407, 412 (Ark. Ct. App. 2017); Progressive Eldercare Servs.-Chicot, Inc. v. Long, 449 S.W.3d 324, 327 (Ark. Ct. App. 2014). The Arkansas Court of Appeals considered a factually similar case in Hickory Heights: a nursing home resident's daughter, who was not the resident's legal representative, signed an admission agreement as the resident's "Responsible Party" upon the resident's admission to a nursing center. 557 S.W.3d at 288. The agreement included a definition of "Responsible Party" virtually identical to the one in this case. Id. at 289. When the resident sued the nursing center, it, like Northport, responded by filing a motion to compel arbitration. Id. The Court of Appeals held that there was an ambiguity in the contract as to whether the daughter attempted to sign as her mother's representative, and it construed the ambiguity against the agreement's drafter, the nursing center. Id. at 290. It therefore "conclude[d] that [the daughter] attempted to act in a representative capacity. Lacking authority to so act, there is no valid underlying contract to enforce against [the resident]." Id. The Court thus declined to order the dispute to arbitration.

Here, the form contract prepared by Northport states that its terms and conditions are agreed by Clyde; Clyde's Responsible Party, Matt; and Northport. As in Hickory Heights, the definition of Responsible Party in the Agreement equates a Responsible Party to a legal guardian, attorney-in-fact, or legal representative. The Agreement goes on to state that "[t]he Responsible Party represents to the Facility that he . . . tends to make decisions for or otherwise act on behalf of Resident." In the absence of other evidence, including testimony, we find as a matter of law that the

---

[1]In Quarles, the court specifically noted that the third-party beneficiary argument had not been preserved for its review. However, it found that a son did not have actual or apparent authority to bind his mother to a nursing home arbitration agreement. Id.

term "Responsible Party" as used in the Agreement describes a representative similar to a legal guardian.  See Byme, Inc. v. Ivy, 241 S.W.3d 229, 236 (Ark. 2006) ("[A]mbiguities in a written contract are construed strictly against the drafter." (citing Universal Security Ins. Co. v. Ring, 769 S.W.2d 750, 752 (Ark. 1989)).

Accordingly, based on this record, Matt Posey attempted to sign in a representative capacity; he did not sign a contract with Northport in his individual capacity.  See Hickory Heights, 557 S.W.3d at 290.  As Matt was undisputedly not his father's legal guardian or attorney-in-fact, he lacked the capacity to sign the contract as his father's representative.  Because the district court relied on the existence of a valid underlying agreement between Northport and Matt Posey in his individual capacity, we reverse the order compelling arbitration and remand to the district court for proceedings consistent with this opinion.

_____