Cite as 2020 Ark. App. 55

# ARKANSAS COURT OF APPEALS

DIVISION II

**No.** CV-19-277

| | |
|---|---|
| HICKORY HEIGHTS HEALTH AND REHAB, LLC; CENTRAL ARKANSAS NURSING CENTERS, INC.; NURSING CONSULTANTS, INC.; AND MICHAEL MORTON | **Opinion Delivered:** January 29, 2020 |
| | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, TWELFTH DIVISION [NO. 60CV-18-5346] |
| APPELLANTS | |
| V. | HONORABLE ALICE S. GRAY, JUDGE |
| MARY HINES, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF ZELMA GRISSOM AND ON THE BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF ZELMA GRISSOM | |
| APPELLEE | AFFIRMED |

**MEREDITH B. SWITZER, Judge**

This appeal arises from the denial of a motion to compel arbitration. Mary Hines's

mother, Zelma Grissom, was a resident of Hickory Heights Health and Rehab, LLC. As

personal representative of her mother's estate and on behalf of Zelma's wrongful-death

beneficiaries, Mary filed a lawsuit against several entities, including Hickory Heights Health

and Rehab, LLC, Central Arkansas Nursing Centers, Inc., Nursing Consultants, Inc., and

Michael Morton (collectively "Hickory Heights").[1] She asserted claims of negligence,

medical negligence, breach of the admission agreement, breach of the provider agreement,

---

[1]Other defendants were named in the lawsuit but are not parties to this appeal.

and deceptive trade practices. Hickory Heights answered the complaint, asserted the dispute was governed by an arbitration agreement, and later filed a motion to compel arbitration of all claims against it. Following a hearing, the circuit court entered its order denying the motion to compel on October 30, 2018. The court found the arbitration agreement was invalid and unenforceable. This appeal followed. Hickory Heights contends the circuit court erred in finding there was no valid agreement between it and Mary. Our jurisdiction is pursuant to Rule 2(a) of the Arkansas Rules of Appellate Procedure—Civil. We affirm.

The only facts pertinent to this appeal are those involving the admission and arbitration agreements, which were executed when Mary's mother began her residency at Hickory Heights. Zelma Grissom, the actual resident, did not execute either agreement. Instead, Mary signed the admission agreement on the line labeled "Resident's Responsible Party." "Resident's Responsible Party" is defined in the admission agreement as follows:

> The Resident's Responsible Party is the Resident's legal guardian, if one has been appointed, the Resident's attorney-in-fact, if the Resident has executed a power of attorney, or some other individual or family member who agrees to assist the Facility in providing for the Resident's health, care and maintenance. It includes a person who manages, uses, controls, or otherwise has legal access to Resident's income or resources that legally may be used to pay Resident's share of cost or other charges not paid by the Arkansas Medicaid Program or any other source.

Mary also signed the arbitration agreement as the "Responsible Party" and wrote "Daughter" on the line labeled "Responsible Party's Relationship to Resident." The arbitration agreement defines "Responsible Party" accordingly:

> Your Responsible Party is your legal guardian, if one has been appointed, your attorney-in-fact, if you have executed a power of attorney, or some other individual or family member who agrees to assist the Facility in providing for your health, care and maintenance.

Also in the arbitration agreement, the following sentence appears with no checkmark beside it:

_____ (Check if applicable) A copy of my guardianship papers, durable power of attorney or other documentation has been provided to the Facility and is attached.

The arbitration agreement states that it is "an addendum to and part of the admission agreement" and "a condition of admission" that "governs the resolution of claims," and "any and all claims, disputes, and controversies . . . shall be resolved exclusively by binding arbitration and not by a lawsuit or resort to court process."

Hickory Heights moved to compel arbitration of the claims against it on the theory that Mary signed the arbitration agreement in her individual capacity and that Zelma was therefore bound to its terms as a third-party beneficiary. In support of its argument, Hickory Heights admits that Zelma was not a named party to the agreements. Hickory Heights notes that the only name written on the arbitration agreement is that of the responsible party, Mary, and there was no indication Mary was attempting to act as a representative of Zelma. Hickory Heights contends that by identifying herself as Zelma's "daughter," she was merely indicating her relationship to the resident and not indicating she had authority to bind Zelma. It also contends that Mary knew she did not have authority to act on her mother's behalf, and when she signed the agreements, valid contracts were formed having the clear intent to provide care and treatment for Zelma. In other words, Zelma was the intended third-party beneficiary of the agreements. Lastly, Hickory Heights contends that because Mary attempts to sue for breach of the admission agreement, she must be bound by the admission agreement's terms, which includes the incorporated arbitration agreement.

The circuit court rejected Hickory Heights's position, finding that Mary's signing the arbitration agreement in her capacity as Zelma's daughter does not support the inference that Mary was signing the agreement in her individual capacity. Accordingly, the third-party-beneficiary doctrine did not apply. The circuit court further found ambiguity regarding the capacity in which Mary signed the arbitration agreement, and construing the ambiguity against Hickory Heights, as the drafter, found the arbitration agreement unenforceable.

We review a circuit court's order denying a motion to compel arbitration de novo on the record. *Hickory Heights Health & Rehab, LLC v. Cook*, 2018 Ark. App. 409, 557 S.W.3d 286. Arbitration is simply a matter of contract between parties. *Id.* Whether a dispute should be submitted to arbitration is a matter of contract construction, and we look to the language of the contract that contains the agreement to arbitrate and apply state-law principles. *Id.* The same rules of construction and interpretation apply to arbitration agreements as apply to agreements generally. *Id.* Therefore, we seek to give effect to the parties' intent as evidenced by the arbitration agreement itself. *Id.* The construction and legal effect of an agreement to arbitrate are to be determined by this court as a matter of law. *Id.*

Hickory Heights acknowledges that in the recent case of *Cook*, *supra*, our court held that the third-party beneficiary doctrine did not apply with respect to a similar arbitration agreement executed by a resident's daughter as the "Responsible Party." Our court reasoned that there was an ambiguity regarding whether the responsible party was attempting to sign in an individual or representative capacity, and our court construed that

ambiguity against Hickory Heights as the drafter of the agreement. Hickory Heights contends *Cook* should not be followed here because it was wrongly decided. Hickory Heights argues that the *Cook* court erred in ignoring the principle that doubts about arbitrability must be resolved in favor of arbitration and that *Cook* is preempted by the Federal Arbitration Act. We disagree.

The pertinent language of the arbitration and admission agreements in the instant case is identical to that in *Cook*. As explained in *Cook*, two threshold questions must be answered in deciding whether to grant a motion to compel arbitration: (1) is there a valid agreement to arbitrate between the parties, and (2) if such an agreement exists, does the dispute fall within its scope? In answering these questions, doubts about arbitrability must be resolved in favor of arbitration. *Id.* Our court is also guided by the legal principle that contractual agreements are construed against the drafter. *Id.* The *Cook* opinion stated that the lawsuit undoubtedly fell within the scope of the arbitration agreement but concluded that the question presented by the appeal was whether Mabel, the mother/resident, was bound by the arbitration agreement signed by her daughter, Ethel. Mabel alleged that Ethel signed solely in a representative capacity for Mabel but lacked any authority to do so; therefore, Mabel was not bound by the arbitration agreement. Hickory Heights alleged that Ethel signed the arbitration agreement in her individual, not representative, capacity; Mabel was clearly the intended beneficiary of those contracts; and as a third-party beneficiary of the contracts, she was bound by their terms requiring arbitration. *Id.*

As explained in *Cook*, the terms of an arbitration agreement generally do not apply to those who are not parties to the contract. In Arkansas, the presumption is that parties

5

contract only for themselves. *Id.* A contract will not be construed as having been made for the benefit of a third party unless it clearly appears that such was the parties' intention. *Id.* In order to apply the third-party-beneficiary doctrine under Arkansas law, there must be an underlying valid agreement between two parties, and there must be evidence of a clear intention to benefit a third party. *Id.*

The instant case is nearly identical to the facts and issues presented in *Cook*. In *Cook*, our court reasoned:

> Although these documents recite that Ethel signed as "Responsible Party" and not as the resident's "Representative," the definition of "Responsible Party" in these documents can reasonably be construed to indicate that such authority is being asserted:
>
> > Your Responsible Party is your legal guardian, if one has been appointed, your attorney-in-fact, if you have executed a power of attorney, or some other individual or family member who agrees to assist the Facility in providing for your health, care and maintenance.
>
> The Arbitration Agreement requests documentation to support the asserted authority on which the person claims to be the "Responsible Party." Mabel did not have a legal guardian, but she did have a durable power of attorney vested in Charles A. Cook. Mr. Cook was the person who possessed legal authority and who was available to be the "Responsible Party." Ethel did not possess legal authority to bind her mother in a representative capacity, which is an undisputed fact.
>
> Other cases on this topic reflect a consistent line of reasoning that family members do not possess the authority to bind the resident when that person attempts to act in a representative capacity.

2018 Ark. App. 409, at 7–8, 557 S.W.3d at 290–91. The *Cook* opinion then listed and discussed several cases and concluded that

> [i]n the present appeal, the parties to the arbitration agreement are recited to be the facility, and "The Resident and/or Responsible Party." Because there is no clear indication anywhere in this agreement to demonstrate whether Ethel was signing in an individual capacity or in a representative capacity, we hold that there is

ambiguity in the agreement that must be construed against the drafter of the agreement.

"[O]ur laws require that if uncertainty or ambiguity exists within the terms of a contract, or if it is susceptible to more than one reasonable construction, then the courts must construe the contract most strongly against the party who drafted it." Therefore, we construe this contract most strongly against Hickory Heights and affirm the trial court's refusal to compel arbitration.

2018 Ark. App. 409, at 10–11, 557 S.W.3d at 292 (citations omitted). We are not persuaded that *Cook* was wrongly decided or that it does not control the outcome here. As explained in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), arbitration agreements must be placed on an equal footing with other contracts and enforced according to their terms, but arbitration agreements may still be invalidated by generally applicable contract defenses. The same ambiguity that existed in *Cook* exists here because there is no clear indication anywhere in this agreement to demonstrate whether Mary was signing in an individual capacity or in a representative capacity. Therefore, the agreement here must also be construed against Hickory Heights as its drafter.

In addition to arguing that *Cook* was wrongly decided, Hickory Heights attempts to distinguish *Cook* from the instant case in light of what it alleges is a "crucial difference"— the plaintiff in *Cook* did not assert a claim for breach of the admission agreement as the plaintiff did in this case. Relying upon *American Insurance Co. v. Cazort*, 316 Ark. 314, 871 S.W.2d 575 (1994), Hickory Heights argues that Mary "cannot have it both ways" here because by suing for breach of the admission agreement, Mary has conceded its validity and should not be permitted to avoid enforcement of the arbitration agreement, which was an addendum to and incorporated into the admission agreement. We disagree.

7

Zelma did not agree to arbitrate, and her daughter, Mary, had no authority to make such an agreement on her behalf. The language incorporating the arbitration agreement into the admission agreement is therefore of no consequence. We hold that the circuit court did not err in determining that Hickory Heights cannot compel arbitration pursuant to an agreement that was never validly formed.

Affirmed.

VIRDEN and BROWN, JJ., agree.

*Hardin, Jesson & Terry, PLC*, by: *Jeffrey W. Hatfield*, *Kynda Almefty*, *Carol Ricketts*, and *Kirkman T. Dougherty*, for appellants.

*Reddick Moss, PLLC*, by: *Matthew D. Swindle* and *Robert W. Francis*, for appellee.