Cite as 2024 Ark. App. 307

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-23-182

|  |  |
|---|---|
| NURSING AND REHABILITATION CENTER AT GOOD SHEPHERD, LLC; ECUMENICAL CARE AND REHABILITATION CENTER, LLC; CENTRAL ARKANSAS NURSING CENTERS, INC.; NURSING CONSULTANTS, INC.; MICHAEL MORTON; BOBBY LAMB IN HIS CAPACITY AS ADMINISTRATOR OF NURSING AND REHABILITATION CENTER AT GOOD SHEPHERD, LLC; KATIE BALDWIN IN HER CAPACITY AS DIRECTOR OF NURSING OF NURSING AND REHABILITATION CENTER AT GOOD SHEPHERD, LLC; AND JOHN DOES I–V<br><br>APPELLANTS<br><br>V.<br><br>JUDITH WHITE, AS SPECIAL ADMINISTRATRIX OF THE ESTATE OF ELLA HOLMES AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARES OF ELLA HOLMES<br><br>APPELLEE | Opinion Delivered May 8, 2024<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIFTH DIVISION [NO. 60CV-19-3395]<br><br>HONORABLE WENDELL GRIFFEN, JUDGE<br><br>AFFIRMED |

## WAYMOND M. BROWN, Judge

Nursing and Rehabilitation Center at Good Shepherd, LLC; Ecumenical Care and

Rehabilitation Center, LLC; Central Arkansas Nursing Centers, Inc.; Nursing Consultants, Inc.;

Michael Morton; Bobby Lamb in his capacity as administrator of Nursing and Rehabilitation Center

at Good Shepherd, LLC; Katie Baldwin in her capacity as director of nursing of Nursing and Rehabilitation Center at Good Shepherd, LLC; and John Does I–V (collectively, "Good Shepherd") bring this interlocutory appeal from an order of the Pulaski County Circuit Court denying their motion to compel arbitration of a lawsuit filed by Judith White, as special administratrix of the estate of Ella Holmes and on behalf of the wrongful death beneficiaries of Holmes. Good Shepherd argues that the circuit court erred in denying its motion to compel arbitration, despite the existence of a valid and enforceable arbitration agreement. We find no error in the circuit court's denial and affirm.

On October 2, 2015, Holmes was admitted as a resident of Good Shepherd, an Arkansas nursing facility. Doris Wilson, Holmes's daughter, and Judith White, Holmes's sister, were present when Holmes was admitted to the facility. Wilson signed the documents necessary for Holmes's admission, which included an admission agreement and an arbitration agreement. Wilson did not possess a power of attorney or guardianship over her mother. The admission agreement provided in relevant part:

> This Admission Agreement includes the terms and conditions agreed by <u>Ella C. Holmes</u>, the undersigned resident, <u>Doris Wilson</u>, your Responsible Party, and <u>N & R Good Shepherd</u>, the Nursing Facility ("Facility"), in your request for the admission of <u>Ella C. Holmes</u> (Resident Name) to the Facility for medical, nursing, and personal care. The Facility and the Resident and/or Responsible Party agree to the following terms for the Resident's care.

In footnote 2 of the admission agreement, "Responsible Party" is defined as

> the Resident's legal guardian, if one has been appointed, the Resident's attorney-in-fact, if the Resident has executed a power of attorney, or some other individual or family member who agrees to assist the Facility in providing for the Resident's health, care and maintenance. It includes a person who manages, uses, controls, or otherwise has legal access to Resident's income or resources that legally may be used to pay Resident's share of cost or other charges not paid by the Arkansas Medicaid Program or any other source.

Wilson signed the admission agreement as "Resident's Responsible Party."

As a condition of admission, Good Shepherd required residents to sign an arbitration agreement, which was incorporated by reference into the admission agreement. The arbitration agreement provides that it was "entered between <u>N & R Good Shepherd</u> (the "Facility") and _____(Resident), and/or <u>Doris Wilson</u> (Resident's "Responsible Party"), in conjunction with the Admission Agreement and operates as an addendum to and part thereof." It further states that by signing the agreement, the parties acknowledge their understanding and agreement that all disputes will be resolved by binding arbitration. Wilson signed the arbitration agreement as "Responsible Party." On the following line, labeled "Responsible Party's Relationship to Resident," Wilson again signed her name. After the signature block, the arbitration agreement contained the following:

_____(Check if applicable): A copy of my guardianship papers, durable power
of attorney or other documentation has been provided to the Facility and is attached.

There is no check mark in the blank. Holmes, as the resident, did not sign the arbitration agreement or the admission agreement.

Holmes was a resident of Good Shepherd from the time of her admission on October 2, 2015, until her death on August 21, 2017. On May 16, 2019, White, as special administratrix of Holmes's estate, filed a complaint against Good Shepherd alleging that due to insufficient staffing at the facility, Holmes was not turned as often as needed to prevent pressure sores, and as a result, she developed a Stage 2 wound to her left coccyx, a boil to her left buttock, and an unstageable wound to her right heel; and she was often dehydrated and malnourished, which prevented the wounds from healing. White asserted causes of action for negligence, medical malpractice, breach of admission agreement,

3

violations of the Long-Term Care Facility Residents Rights Act, breach of the provider agreement, deceptive trade practices, civil conspiracy, and intentional interference with contractual relationship. Good Shepherd answered, generally denying the allegations and asserting the existence of an arbitration agreement as a defense. On August 23, 2019, Good Shepherd moved to compel arbitration of all claims, alleging that by signing the admission and arbitration agreements, Wilson bound Holmes to the terms of the agreements. Good Shepherd also submitted an affidavit from Bobby Lamb, its administrator, stating that he participated in Holmes's admissions process and he remembered that Holmes had given Wilson "permission to complete the admissions paperwork on her behalf." In the September 9 response, White contended no valid arbitration agreement existed because (1) the documents failed to identify the parties thereto; (2) the agreement lacked mutual obligations; and (3) Wilson lacked authority to bind Holmes to the agreement's terms. An affidavit from Wilson was also submitted with the response. In the affidavit, Wilson stated that, at the time of Holmes's admission to the facility, the admissions representative requested that she sign the paperwork for her mother. Wilson further stated she does not recall Holmes ever requesting that she sign the paperwork for her and that Holmes was not present when the admissions documents were signed. Good Shepherd filed a reply brief on September 16. The circuit court denied Good Shepherd's motion to compel arbitration in an order entered on November 17, 2022. In the order, the court found:

> Mutuality is lacking from the Arbitration Agreement on its face and is invalid. There is no indication that Doris Wilson had agency to sign the Arbitration Agreement on Ella Holmes' behalf. Agency is not presumed. The Motion, and exhibits appended thereto, do not indicate that Wilson had been appointed Power of Attorney over Holmes, that Wilson had been appointed as guardian over Holmes, or that Wilson had the authority to bind Holmes to *any* contract.

4

This appeal followed.

On appeal, Good Shepherd argues that the circuit court erred in denying its motion to compel arbitration despite the existence of a valid arbitration agreement. Further, Good Shepherd contends that the circuit court's order is contrary to the Federal Arbitration Act ("FAA")[1] and the strong public policy in favor of arbitration.[2]

An order denying a motion to compel arbitration is immediately appealable pursuant to Arkansas Rule of Appellate Procedure–Civil 2(a)(12).[3] We review a circuit court's denial of a motion to compel arbitration de novo on the record.[4] While we are not bound by the circuit court's decision, in the absence of a showing that the circuit court erred in its interpretation of the law, we will accept its decision as correct on appeal.[5]

The FAA establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution.[6] Despite an arbitration agreement being subject to the FAA, this court first looks to state contract law to determine if the parties' agreement is valid.[7]

---

[1] 9 U.S.C. §§ 1 et seq.

[2] *See Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246 (2017).

[3] (2023).

[4] *Robinson Nursing & Rehab. Ctr., LLC v. Phillips*, 2019 Ark. 305, 586 S.W.3d 624.

[5] *Progressive Eldercare Servs.-Morrilton, Inc. v. Taylor*, 2021 Ark. App. 379.

[6] *Reg'l Care of Jacksonville, LLC v. Henry*, 2014 Ark. 361, 444 S.W.3d 356.
[7] *GGNSC Holdings, LLC v. Chappel*, 2014 Ark. 545, 453 S.W.3d 645.

Arbitration is simply a matter of contract between parties.[8]  Whether a dispute should be submitted to arbitration is a matter of contract construction, and we look to the language of the contract that contains the agreement to arbitrate and apply state-law principles.[9]  The same rules of construction and interpretation apply to arbitration agreements as apply to agreements generally; thus, we seek to give effect to the intent of the parties as evidenced by the arbitration agreement itself.[10]  The construction and legal effect of an agreement to arbitrate are to be determined by this court as a matter of law.[11]

When a court is asked to compel arbitration, it must decide two questions: (1) whether there is a valid agreement to arbitrate between the parties, and (2) if such an agreement exists, whether the dispute falls within its scope.[12]  In answering these questions, doubts about arbitrability must be resolved in favor of arbitration.[13]  We are also guided by the legal principle that contractual agreements are construed against the drafter.[14]

The threshold issue is whether there was a valid agreement to arbitrate.  The essential elements for an enforceable arbitration agreement are (1) competent parties, (2) subject matter, (3)

---

[8]*Hickory Heights Health & Rehab, LLC v. Cook*, 2018 Ark. App. 409, 557 S.W.3d 286.

[9]*Id.*

[10]*Id.*

[11]*Id.*

[12]*Asset Acceptance, LLC v. Newby*, 2014 Ark. 280, 437 S.W.3d 119.

[13]*Colonel Glenn Health & Rehab, LLC v. Aldrich*, 2020 Ark. App. 222, 599 S.W.3d 344.

[14]*Id.*

6

legal consideration, (4) mutual agreement, and (5) mutual obligation.[15] Good Shepherd, as the proponent of the arbitration agreement, has the burden of proving these essential elements.[16]

Good Shepherd argues that the arbitration agreement is valid because Wilson had actual authority to sign the agreement on Holmes's behalf, thereby binding Holmes to the terms of the agreement. In support of this assertion, Good Shepherd directs the court's attention to the affidavit of administrator Lamb. Lamb stated, "At the time of her admission, Ms. Holmes was accompanied by her daughter, Ms. Doris Wilson. I participated in Ms. Holmes' admission process, and I remember Ms. Holmes giving Ms. Wilson permission to complete the admissions paperwork on her behalf." Good Shepherd contends that Lamb's affidavit sufficiently "establishes that Ms. Wilson had actual authority to complete admission paperwork, which included the Arbitration Agreement, on Ms. Holmes' behalf."

When a third party signs an arbitration agreement on behalf of another, as was done in this case, the court must determine whether the third party was clothed with the authority to bind the other person to arbitration.[17] Agency is not presumed, and if there is uncertainty or ambiguity in an agreement, or it is susceptible to more than one reasonable construction, our courts construe it most strongly against the party who drafted it.[18] The burden of proving an agency relationship lies with

---

[15]*Bank of the Ozarks, Inc. v. Walker*, 2014 Ark. 223, 434 S.W.3d 357.

[16]*See Robinson Nursing & Rehab. Ctr., LLC*, *supra*.

[17]*Broadway Health &Rehab, LLC v. Roberts*, 2017 Ark. App. 284, 524 S.W.3d 407.

[18]*Innisfree Health & Rehab, LLC v. Jordan*, 2020 Ark. App. 518.

the party asserting its existence.[19] Not only must the agent "agree to act on the principal's behalf and subject to [her] control]," but the principal must also indicate that the agent is to act for her.[20]

In *Courtyard Gardens Health & Rehabilitation, LLC v. Quarles*,[21] our supreme court held that when Quarles's son signed admission and arbitration agreements upon her entry into the nursing facility, he lacked authority as "Responsible Party" to be considered her agent. Lacking such authority, Quarles was not bound to arbitration with the facility. In that case, Quarles's son signed two arbitration agreements, one when she was admitted to the nursing facility and another one some five months later when Courtyard Gardens took over ownership and operation of the facility. In deposition testimony, Quarles's son stated that he understood he was signing the initial arbitration agreement on his mother's behalf, and that while his mother was not present when he signed it, he thought he showed her the agreement and had discussed with her whether she wanted him to sign it. As to the second arbitration agreement, the one at issue, he did not remember signing it when the facility changed ownership; however, he understood that he signed it on his mother's behalf. The supreme court held that although Quarles's son purported to act on her behalf and subject to her control, there was no evidence to support the contention that she authorized him to do so. Without authorization, Quarles's son failed to establish an agency relationship and consequently lacked actual authority to bind her to the arbitration agreement.

---

[19]*Id.*

[20]*Id.* (citing *Courtyard Gardens Health & Rehab., LLC v. Quarles*, 2013 Ark. 228, at 6, 428 S.W.3d 437, 442–43 (quoting *Evans v. White*, 284 Ark. 376, 378, 682 S.W.2d 733, 734 (1985))).

[21]2013 Ark. 228, 428 S.W.3d 437.

Here, Wilson specifically stated that Holmes was not present when the admission paperwork was signed, and she did not at any time discuss the admission or arbitration agreement with Holmes. Wilson further stated that she had no reason to believe that Holmes knew an arbitration agreement was signed on her behalf. Furthermore, no designation of authority was noted on the agreement, and it is undisputed that Wilson was not Holmes's guardian or attorney-in-fact. There is also no evidence that Wilson manages, uses, controls, or has legal access to Holmes's income or resources as specified in the agreement's definition of residents "Responsible Party." Moreover, in signing the arbitration agreement, Wilson failed to indicate any familial relationship or a relationship of any kind, instead providing only her signature on the line to indicate such relationships. Lamb's affidavit testimony that Holmes authorized Wilson to sign the arbitration agreement on her behalf is expressly contradicted by Wilson's statement. Even taken as fact, Good Shepherd fails to cite any legal authority to support its contention that Holmes, by merely requesting that Wilson complete the admission paperwork, conferred agency to her daughter. The burden of proving an agency relationship lies with the party asserting its existence.[22] Good Shepherd failed to meet its burden. As in *Quarles*,[23] there is insufficient evidence Holmes authorized Wilson to bind her to the arbitration agreement by signing as her "responsible party." Because Wilson's signature did not bind Holmes to the agreement's terms, we need not address Good Shepherd's remaining argument that the arbitration agreement contains mutual obligations.

---

[22]*Id.*

[23]*Supra.*

In sum, because Wilson did not have actual authority to enter into the arbitration agreement on Holmes's behalf, we hold there was no valid arbitration agreement as a matter of law and affirm the circuit court's denial of Good Shepherd's motion to compel arbitration of the claims brought by Holmes's estate.

Affirmed.

GLADWIN and HIXSON, JJ., agree.

*Hardin, Jesson & Terry, PLC*, by: *Jeffrey W. Hatfield*, *Kynda Almefty*, *Carol Ricketts*, and *Kirkman T. Dougherty*, for appellants.

*Ludwig Law Firm, PLC*, by: *Kyle Phillips Ludwig*, *Kale L. Ludwig*, and *Gene A. Ludwig*, for appellee.