**Appeal Reversed, Rendered and Remanded and Opinion Filed October 25, 2024**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-22-01021-CV**
_____

**CAPROCQ CORE REAL ESTATE FUND, LP AND CAPROCQ CORE REAL ESTATE FUND II, LP, APPELLANTS**
**V.**
**ESSA K. ALLEY REVOCABLE TRUST NO. 2, APPELLEE**

**On Appeal from the County Court at Law No. 5**
**Dallas County, Texas**
**Hon. Juan Renteria**
**Trial Court Cause No. CC-21-05539-E**

**MEMORANDUM OPINION**

Before Justices Garcia, Goldstein and Miskel
Opinion by Justice Emily Miskel

In three issues, appellants Caprocq Core Real Estate Fund, LP and Caprocq Core Real Estate Fund II, LP (the LPs) appeal the trial court's order granting summary judgment in favor of limited partner and appellee Essa K. Alley Revocable Trust No. 2 (Alley), arguing that the trial court erred by (1) impliedly denying the LPs' motions to compel arbitration, (2) granting summary judgment to Alley on its

claim for production of additional limited partnership documents, and (3) awarding attorney fees to Alley.

Based on the record presented, we hold that the trial court erred in granting Alley's motion for summary judgment and impliedly denying the LPs' motions to compel arbitration. We reverse and vacate the trial court's summary judgment order dated August 29, 2022, including its award of attorney fees. We also reverse the trial court's implied order denying the LPs' motions to compel arbitration and render an order granting these motions and staying the case pending arbitration. We remand this case to the trial court for further proceedings consistent with this opinion and judgment.

## I.    Background

The LPs are Arkansas limited partnerships formed for acquiring, developing, managing, leasing, and operating commercial real-estate projects. Both limited partnership agreements are governed by Arkansas and federal law.

By their express terms, the limited partnership agreements can be amended by the vote of partners collectively owning 80% and 67%, respectively, of the capital interests of all partners. Each partnership agreement was amended in September 2021 to include identical arbitration provisions broadly providing that any disputes pertaining to the partnerships or in connection with their operations be resolved by binding arbitration. Each amendment provides that all disputes

2

submitted to arbitration shall be resolved in accordance with the Federal Arbitration Act (FAA), and arbitration shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association (AAA).

The record indicates that Alley was apparently displeased with its tax liability deriving from the sale of a property held by one of the LPs. In August 2020, Alley raised concerns about the partnerships' business activities and requested information. Beginning in November 2020, the LPs produced several document binders, hosted Alley representatives for inspection and copying of records over multiple days in the LPs' Arkansas offices, conducted meetings, and prepared supplemental responses. Alley continued to make successive demands for production of additional documents and information. The record reflects that the LPs performed over 100 hours of work in responding to Alley's inquiries.

After Alley continued to demand additional documentation, the LPs' counsel wrote to Alley in October 2021 and stated that further requests would need to comply with the Arkansas statute governing a limited partner's access to partnership information. The LPs demanded reimbursement for the $3,554.40 in costs incurred preparing information for Alley. In the letter, counsel also offered to accept service of an arbitration demand if Alley elected to initiate legal action. Alley responded in November 2021, reiterating its concerns and demanding more information and documents.

In December 2021, Alley sued the LPs in a Dallas County Court at Law requesting that the trial court compel the LPs to produce additional documents and also award attorney fees to Alley. Alley argued that the LPs had refused to produce all requested documents to which Alley is entitled, thus preventing it from investigating its concerns about possible affiliated-party transactions by the general partner in violation of the limited partnership agreements.

In February 2022, each LP timely moved to compel arbitration (attaching affidavit evidence) and answered, subject to its arbitration request. The LPs had not set a hearing on their motions to compel when Alley moved for summary judgment in May 2022. Alley's summary judgment motion was set to be heard on August 5. The LPs attempted to set their motions to compel arbitration for the same August 5 hearing but were unable to secure a setting before September. The LPs filed an opposed motion to reset the summary judgment hearing so that both sides' motions could be heard on the same date.

In their joint summary judgment response, the LPs re-urged their motions to compel arbitration, contending that the trial court was required to stay the litigation and compel arbitration. The LPs also argued that summary judgment would not be proper because a material fact issue existed about whether Alley has complied with Arkansas law regarding its document requests. The LPs submitted affidavit

4

evidence in support of their summary judgment response. The LPs also requested that the trial court first rule on the pending arbitration motions.

Counsel for the LPs renewed the request for scheduling relief at the August 5 summary judgment hearing:

> As opposing counsel noted we do have Motions to Compel Arbitration on file. We believe that those Motions to Compel Arbitration are dispositive of this issue. And so it's our request that you defer ruling on this Motion for Summary Judgment until you've heard those Motions to Compel, which are set for hearing on September 15th.

At that hearing, the parties also argued the pending motions to compel arbitration. The trial court directed Alley to file any response by August 8 so that the trial court could determine the applicability of the arbitration clause. On the same day of the hearing, Alley filed a response without evidence, primarily asserting the arguments it had raised during the hearing—that the arbitration provisions are illusory and procedurally unconscionable and that they were added by amendment after the LPs received notice of Alley's claim and without providing Alley with notice or an opportunity to vote. On August 29, the trial court signed an order granting Alley's dispositive motion for summary judgment, ordering production of additional documents, and awarding Alley attorney fees. The order makes no mention of the LPs' motions to compel arbitration. The LPs brought this appeal.

## II. The Trial Court Impliedly Denied the LPs' Motions to Compel Arbitration, and Error Was Preserved

As a threshold matter, Alley asserts that the LPs did not preserve error because (1) the LPs failed to obtain a hearing or ruling on the motions to compel by failing to set them for a hearing, and (2) they failed to file a motion for new trial. The LPs argue that the trial court heard their motions at the summary judgment hearing and impliedly denied their motions by granting Alley's motion for summary judgment. We agree with the LPs and conclude that any error relating to their motions to compel arbitration was preserved.

As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by timely request, objection, or motion, and that the trial court either ruled (expressly or implicitly) or refused to rule on the request. *See* TEX. R. APP. P. 33.1(a).

In this case, it is clear from the record and transcript of the summary judgment hearing that the LPs asked the trial court to delay ruling on the summary judgment motion until after hearing the LPs' motions to compel arbitration (or to hear the motions concurrently). It is also clear that the trial judge heard arguments from the parties on the motions to compel arbitration at the summary judgment hearing. The trial judge stated at the hearing that he would examine the motions to compel arbitration "to see if it may or may not apply." The trial judge provided Alley with an opportunity to file a response to the motions to compel arbitration after the

6

hearing, and Alley promptly filed a response that day. The trial court then granted Alley's summary judgment motion. Although, the order does not refer to the LPs' motions to compel arbitration, it states that the court granted the motion for summary judgment "after reviewing all things on file herein, and hearing the arguments of counsel."

Accordingly, we conclude that the trial court impliedly denied the LPs motions to compel arbitration when it granted Alley's dispositive motion for summary judgment. *See* TEX. R. APP. P. 33.1(a)(2)(A); *Wilson N. Jones Mem'l Hosp. v. Ammons*, 266 S.W.3d 51, 58-59 (Tex. App.—Dallas 2008, pet. denied) ("A ruling is implicit if it is unexpressed, but capable of being understood from something else."). A ruling thus was obtained, and a motion for new trial was not required to preserve error. *See* TEX. R. APP. P. 33.1; TEX. R. CIV. P. 324. We conclude that the LPs preserved any error relating to their motions to compel.

## III. The Trial Court Erred When it Impliedly Denied the LPs' Motions to Compel Arbitration

In their first issue, the LPs argue that the trial court erred in impliedly denying their motions to compel arbitration because Alley's claims are covered by valid and binding arbitration provisions. Alley responds that the arbitration provisions are invalid and unenforceable. Alley further argues that the arbitration agreements are inapplicable because the conduct giving rise to Alley's claim occurred prior to the adoption of the arbitration provisions.

## A. Standard of Review

We review a denial of a motion to compel arbitration for an abuse of discretion, reviewing questions of law de novo and factual determinations under a no-evidence standard of review which defers to the trial court's factual determinations that are supported by evidence. *See Conn Appliances, Inc. v. Jones*, No. 05-20-00149-CV, 2020 WL 6304990, at *2 (Tex. App.—Dallas Oct. 28, 2020, no pet.) (mem. op.); *see also Sidley Austin Brown & Wood, L.L.P. v. J.A. Green Dev. Corp.*, 327 S.W.3d 859, 862–63 (Tex. App.—Dallas 2010, no pet.).

Whether a valid arbitration agreement exists is a question of law that we review de novo. *Lennar Homes of Tex. Land & Constr., Ltd. v. Whiteley*, 672 S.W.3d 367, 376 (Tex. 2023). Also, whether an arbitration agreement is enforceable is subject to de novo review. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding).

## B. Applicable Law

As explained in this section, we apply substantive federal arbitration law under the FAA and Texas procedural law. *See Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992) (orig. proceeding). We also apply Arkansas contract law. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

### 1. Existence and Validity of Arbitration Agreements

"The primary purpose of the [FAA] is to require the courts to compel arbitration when the parties have so provided in their contract . . . ." *Jack B. Anglin*,

842 S.W.2d at 271. Under the substantive federal law set forth in § 2 of the FAA, written arbitration agreements shall be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2; *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 629-30 (2009). A party seeking to compel arbitration under the FAA must establish the existence of a valid arbitration agreement and the existence of a dispute within the scope of the agreement. *Lennar Homes*, 672 S.W.3d at 376; *Bigge Crane & Rigging Co. v. Entergy Ark., Inc.*, 457 S.W.3d 265, 268 (Ark. 2015). Any doubts concerning an arbitration clause's scope are resolved in favor of arbitration. *See First Options*, 514 U.S. at 945. Federal, Arkansas, and Texas law strongly favor arbitration. *See In re Rubiola*, 334 S.W.3d 220, 225 (Tex. 2011) (orig. proceeding) (regarding federal and Texas law); *BHC Pinnacle Point Hosp., LLC v. Nelson*, 594 S.W.3d 62, 70 (Ark. 2020) (regarding Arkansas law).

If the party seeking to compel arbitration establishes that a valid contract exists that covers the claims in dispute, then the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcing the agreement. *Tantrum Street, LLC v. Carson*, No. 05-16-01096-CV, 2017 WL 3275901, at *3 (Tex. App.—Dallas Jul. 25, 2017, no pet.) (mem. op.); *see also In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (orig. proceeding) (per curiam). "Once the party moving for arbitration has offered prima facie evidence of an arbitration

9

agreement's existence, the burden shifts to the party contesting the existence of an arbitration agreement to provide arguments and evidence as to why the arbitration agreement has a formation defect so as to create a triable issue that would defeat summary disposition." *Ridge Nat. Res., L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 118 (Tex. App.—El Paso 2018, no pet.).

Parties may delegate threshold arbitrability questions to the arbitrator if the parties' agreement does so by clear and unmistakable evidence. *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 69 (2019). However, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists. *Id.*

When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts should apply ordinary state-law principles that govern the formation of contracts. *See First Options*, 514 U.S. at 944. Under the FAA, an agreement to arbitrate is valid if it meets the requirements of the general contract law of the applicable state. *In re AdvancePCS Health*, 172 S.W.3d at 606; *GGNSC Holdings, LLC v. Lamb*, 487 S.W.3d 348, 353 (Ark. 2016). Under Arkansas law, the essential elements for an enforceable arbitration agreement are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligation. *GGNSC Holdings*, 487 S.W.3d at 353. Alley

only disputes the elements of mutual agreement and mutual obligation as discussed herein.

### 2. Motions to Compel Arbitration Should be Decided Summarily

Proceedings to compel arbitration are to be conducted as summary proceedings to protect the advantages of arbitration because "the main benefits of arbitration lie in expedited and less expensive disposition of a dispute, and the legislature has mandated that a motion to compel arbitration be decided summarily." *Jack B. Anglin*, 842 S.W.2d at 269; *see also* CIV. PRAC. § 171.021(b). Texas procedural law applies to this determination. *Jack B. Anglin*, 842 S.W.2d. at 272. Texas's General Arbitration Act (the TAA) also applies to the extent it does not thwart the purposes and objectives of the FAA. *See* TEX. CIV. PRAC. & REM. CODE Ch. 171; *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 98 (Tex. 2011); *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 779–80 (Tex. 2006).

The trial court may summarily decide whether to compel arbitration on the basis of affidavits, pleadings, discovery, and stipulations. *Jack B. Anglin*, 842 S.W.2d at 269. However, if the material facts necessary to determine the issue are controverted by an opposing affidavit or otherwise admissible evidence, the trial court must conduct an evidentiary hearing to determine the disputed material facts. *Id.*; *see also* CIV. PRAC. §§ 171.021(b), .023(b).

The FAA requires a trial court to stay a suit involving issues referable to arbitration under a written arbitration agreement. 9 U.S.C. § 3; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 n. 34 (1983). The TAA further requires that a trial court "shall stay a proceeding that involves an issue subject to arbitration if an order for arbitration *or an application for that order* is made under this subchapter." TEX. CIV. PRAC. & REM. CODE ANN. § 171.025(a) (emphasis added). By not staying proceedings pending its ruling on a motion to compel arbitration, a court clearly abuses its discretion. *In re Pediatrix Med. Servcs., Inc.*, No. 05-05-00986-CV, 2005 WL 1776039, at *1 (Tex. App.—Dallas July 28, 2005, orig. proceeding) (mem. op.).

Before arbitration proceedings begin, the TAA also authorizes courts to issue certain types of orders in support of arbitration but does not permit orders ruling on the merits of the case. *See* CIV. PRAC. § 171.086(a) (listing non-merits orders that court may render before arbitration proceedings begin); *Tantrum Street, LLC,*, 2017 WL 3275901, at *9 (Under 171.086(a), "the trial court clearly abused its discretion by ruling on [the] summary judgment motion while [the] motion to compel arbitration was pending . . . .").

## C.     The LPs Established Valid Arbitration Agreements

The LPs argue that the arbitration provisions in the partnership agreements are valid and enforceable against Alley, and that the trial court erred to the extent it

impliedly determined that the arbitration provisions were invalid or unenforceable. Alley does not dispute the validity of the original partnership agreements, which also form the basis of its underlying affirmative claim to compel production of partnership documents for its review. Instead, Alley responds that it disputes the validity and enforceability of the arbitration provisions contained in the subsequent amendments to the partnership agreements, which state in part:

> Arbitration. The Partners agree to take all reasonable steps to resolve disputes between them without resorting to arbitration. However, upon the demand of any party, any Dispute (as such term is defined herein) shall be resolved by binding arbitration in accordance with the terms of this Section. A "Dispute" shall mean any action, dispute, claim or controversy of any kind, whether in contract or tort, statutory or common law, legal or equitable, now existing or hereafter arising under or in connection with, or in any way pertaining to this Agreement, any action against the General Partner or any other Partner or in connection with the operation of the Partnership, including any derivative action.

We must first determine whether a valid arbitration agreement exists.[1] *See Henry Schein*, 586 U.S. at 69 (citing 9 U.S.C. § 2). The LPs had the burden under the FAA to establish the existence of a valid arbitration agreement. *See Lennar Homes*, 672 S.W.3d at 376. The LPs supported their motions to compel arbitration with sworn affidavits of the chief executive officer of the general partner of each LP,

---

[1] A court may determine a specific challenge to the validity of an arbitration agreement or clause within a contract, although a challenge to the validity of the contract as a whole (and not specifically the arbitration clause) must go to the arbitrator. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006). Alley disputes only the arbitration provisions contained within the partnership agreement amendments and has not challenged the validity of the other provisions of the amendments relating to confidentiality of partnership information or the validity of the original partnership agreements.

attesting to the attached partnership agreements and amendments. The affidavits declare that partners representing more than 80% (in the case of one LP) and 67% (in the case of the other LP) of the capital interest of all partners amended the respective partnership agreements to include provisions relating to arbitration of disputes as well as confidentiality of information concerning the partnerships. These percentage interests met the approval requirements for amendments set forth in the respective partnership agreements. Alley's response includes no evidence controverting these declarations or establishing a disputed material fact. We must accept as true the clear, direct, and positive evidence of an undisputed affidavit, even of a party's agent. *Jack B. Anglin*, 842 S.W.2d at 270. We conclude that the LPs established the existence of valid arbitration agreements.

## D. Alley Failed to Meet its Burden to Show that the Arbitration Agreements are Invalid or Unenforceable

Once the LPs established the existence of valid arbitration agreements, the burden shifted to Alley to prove a formation defect or affirmative defense. *See AdvancePCS*, 172 S.W.3d at 607; *Tantrum Street*, 2017 WL 3275901 at *3; *Ridge*, 564 S.W.3d at 118. Alley alleged that the arbitration provisions in the amended partnership agreements are invalid or unenforceable, asserting the following arguments:

- There was no "meeting of the minds" with respect to the arbitration provisions because they were added without Alley's knowledge or consent;

14

- The arbitration provisions are illusory because the LPs can unilaterally amend the partnership agreements; and

- The arbitration provisions are procedurally unconscionable because they were added in response to notice of Alley's claim.

Based on the record, we can decide each of Alley's arguments against the arbitration agreements as a matter of law.

## 1. A Meeting of the Minds Occurred

In its first argument responding to the LPs' appeal, Alley challenges the validity of the arbitration provision by asserting that no meeting of the minds occurred. Alley asserts that it did not receive notice of a partnership meeting and did not receive notice that it had a right to vote or that its rights might be impaired. Alley further contends that it did not consent to waive its constitutional right to a jury trial.

The same rules of construction apply to arbitration agreements as apply to agreements in general. *Bank of the Ozarks, Inc. v. Walker*, 434 S.W.3d 357, 360 (Ark. 2014). Mutual agreement is an essential element of an enforceable arbitration agreement. *Id.* In determining whether a valid contract was entered into between parties, there must be a meeting of the minds as to the terms of the contract, using objective indicators. *Id*.

Alley does not dispute that a meeting of the minds occurred with respect to the original partnership agreements. Alley does not cite any Arkansas law involving

15

the amendment of partnership agreements to add arbitration provisions; however, in upholding amendments to add forum selection clauses, other courts have reiterated that amendments to partnership agreements adopted in accordance with the provisions of the partnership agreement are binding on all partners. *See*, *e.g.*, *In re Plains All Am. Derivative Litig.*, No. H-15-3632, 2016 WL 6634929, at *4 (S.D. Tex. Nov. 8, 2016) (mem. op. and order) (due to the amendment procedures in the partnership agreement, the unitholder-plaintiffs were on notice that defendants could amend the agreement unilaterally at any time); *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 726 (8th Cir. 2001) (because the limited partners agreed to the majority vote procedure by which the partnership agreements were subsequently amended to identify a forum state for arbitration hearings, they could not later argue that they did not consent to be bound by the amendments).

Alley does not challenge the original partnership agreements, and it provided no evidence to controvert the LPs' evidence that the amendments were validly adopted under the terms of those original partnership agreements. Alley has not shown that there are any disputed material facts regarding a meeting of the minds. The amendment provisions of the original partnership agreement executed by Alley put Alley on notice that, due to the supermajority vote requirements, Alley could be bound by amendments to the partnership agreement even if it did not agree with the amendments.

We conclude that a meeting of the minds occurred with respect to the original partnership agreements and therefore the amendments adopted thereunder containing the arbitration provisions are binding. To hold otherwise would violate the principle that arbitration agreements are a matter of contract and must be placed on equal footing with all other contracts and enforced in accordance with their terms. *See AT&T Mobility LLC v. Concepcion*, 563 U.S 333, 339 (2011); *Jorja Trading, Inc. v. Willis*, 598 S.W.3d 1, 3 (Ark. 2020).

Alley's allegation that it did not consent to waive its right to a jury trial is inapposite—a valid agreement to arbitrate necessarily includes an agreement for the resolution of disputes by an arbitrator rather than a jury. *See Bernhardt v. Polygraphic Co. of America*, 350 U.S 198, 203 (1956) ("Arbitration carries no right to trial by jury that is guaranteed both by the Seventh Amendment and by [the state's] Constitution.").

Accordingly, we conclude as a matter of law that Alley failed to carry its burden to show that no agreement to arbitrate was formed because there was no meeting of the minds.

### 2. The Arbitration Provisions are Not Illusory

In its second argument responding to the LPs' appeal, Alley asserts that the arbitration provisions are illusory and thus unenforceable because the provisions could be amended to waive Alley's rights without notice or opportunity to vote.

17

A valid arbitration agreement requires mutual obligation. *See Jorja Trading*, 598 S.W.3d at 5. "Mutuality of obligations means an obligation must rest on each party to do or permit to be done something in consideration of the act or promise of the other; thus, neither party is bound unless both are bound." *Id.* A contract that provides one party the option not to perform his promise would not be binding on the other. *Id.* An arbitration provision may be illusory, for example, where one party is limited to arbitration while the other retains the sole right to pursue legal or equitable remedies. *See Richard Harp Homes, Inc. v. Van Wyk*, 262 S.W.3d 189, 192-93 (Ark. App. 2007). However, courts "cannot require that every provision in an arbitration agreement be bilateral without violating the FAA because doing so would hold arbitration agreements to a more stringent analysis than other contracts." *Jorja Trading*, 598 S.W.3d at 6.

The Arkansas Supreme Court has emphasized that, while Arkansas contract law is employed to decide whether an arbitration agreement is valid, under the FAA "our review is limited to the extent that it applies to contracts generally, and not arbitration agreements selectively." *Jorja Trading*, 598 S.W.3d at 5 (citing *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 251 (2017)). A court cannot invalidate an arbitration agreement based on legal rules that apply only to arbitration agreements. *Jorja Trading*, 598 S.W.3d at 6 (citing *DIRECTV, Inc. v. Imburgia et al.*, 577 U.S. 47, 57 (2015)). This FAA principle would be violated if we determine

18

that these arbitration provisions, adopted under the terms of the underlying partnership agreements, are not valid because they relate to arbitration when other non-arbitration amendments adopted under the same procedures would be valid.

In this case, the arbitration provisions apply equally to all parties. The arbitration provisions cannot be amended or terminated unilaterally by the LPs—that would require the approval of partners owning the requisite supermajority of capital interests under the partnership agreements. As previously discussed, amendments to partnership agreements may be duly adopted in accordance with the terms of the partnership agreement to which the limited partner initially agreed. *See Dominium Austin Partners*, 248 F.3d at 726 (concluding that partner who did not vote in favor of amendment of partnership agreement to include forum selection clause within arbitration provision was bound by amendments that passed by majority vote requirements in underlying partnership agreement).

In addition, the "Miscellaneous" provision of the amendments states that, to the maximum extent practicable, the parties, arbitrators, and AAA shall take all action required to conclude any arbitration proceedings within 180 days of the filing of the dispute with the AAA. The same provision provides that "[t]his arbitration provision shall survive termination, amendment or expiration of the [partnership agreement] or any relationship between the Parties." This language further limits the LPs from being able to unilaterally terminate a pending arbitration proceeding.

19

Alley presented no evidence disputing the LPs' evidence or creating a fact issue that the agreements are illusory or that the LPs have the ability to unilaterally terminate the arbitration provisions. Alley cites no Arkansas contract law supporting its position, and Alley's cited Texas cases primarily involve employer-employee or similar relationships in which one party can unilaterally terminate the arbitration agreement. *See, e.g., In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex. 2002) (orig. proceeding) (discussing notice and acceptance requirements for employer asserting unilateral changes to at-will employment contract with employee by adding dispute resolution program).

Accordingly, we conclude as a matter of law that Alley failed to carry its burden to show that no agreement to arbitrate was formed because the arbitration provisions were illusory.

### 3. The Arbitration Provisions Are Not Unconscionable

We also consider Alley's challenge to the LPs' motions to compel on procedural unconscionability grounds. In the trial court, Alley argued that enforcement of the arbitration provisions would be procedurally unconscionable because the amendments were added in response to notice of Alley's claim, and Alley had no notice of the waiver of its rights and no ability to vote, participate, or bargain in the transaction.

The Arkansas Supreme Court has recognized that "unconscionability" is not precisely defined in the law but has described an unconscionable contract as one that "no man in his senses and not under delusion would make on the one hand, and . . . no honest and fair man would accept on the other." *GGNSC Holdings*, 487 S.W.3d at 356. To be unconscionable, a contract "must oppress one party and actuate the sharp practices of the other." *LegalZoom.com. v. McIllwain*, 429 S.W.3d 261, 264 (Ark. 2013). The Arkansas Supreme Court also has acknowledged the difference between "procedural unconscionability" and "substantive unconscionability." *GGNSC Holdings*, 487 S.W.3d at 357. Procedural unconscionability encompasses contracts where there is an absence of meaningful choice on the part of one of the parties together with contract terms that are unreasonably favorable to the other party. *Id.* at 357. Substantive unconscionability relates to the terms of the contract and whether they are harsh, one-sided, or oppressive. *Dooley v. Dillard's, Inc.*, No. 2:20-CV-2086, 2020 WL 3578023, at *3 (W.D. Ark. July 1, 2020). In assessing whether a particular contractual provision is unconscionable, the Arkansas Supreme Court reviews the totality of the circumstances surrounding the negotiation and execution of the contract, including whether there is a gross inequality of bargaining power between the parties and

whether the aggrieved party was made aware of and comprehended the provision in question.[2] *See GGNSC Holdings*, 487 S.W.3d at 357.

In the trial court, Alley had the burden of proving its affirmative defense to the enforceability of the arbitration provisions. *See id*. Alley objected to the arbitration provisions on grounds of procedural unconscionability and not substantive unconscionability. Alley argues that the arbitration provisions were added after it began requesting documents in August 2020. Alley does not clearly state when it gave notice of its "claim." It is undisputed, however, that the arbitration provisions were added by amendment in September 2021 after Ally's initial document requests but prior to any initiation of legal action in a court and prior to the exchange by the parties of the October 2021 and November 2021 letters regarding additional document demands by Alley that form the claim in Alley's legal action.

Alley further argues that it was provided "no notice of the partnership meeting, no notice that its rights could be waived, and no opportunity to vote." However, Alley did not attach any affidavits or other evidence in its response to the motion to compel in the trial court to support these arguments or controvert the LPs'

---

[2] Some federal courts applying Arkansas law require the party opposing arbitration to show both procedural and substantive unconscionability. *See e.g. Dooley*, 2020 WL 3578023, at *3; *Jarrett v. Panasonic Corp. of N. Am.*, 8 F.Supp. 3d 1074, 1082 (E.D. Ark. 2013). We need not address this issue given that Alley has not provided evidence of procedural unconscionability.

evidence. Alley thus failed to demonstrate a disputed material fact issue requiring an evidentiary hearing. *See Jack B. Anglin*, 842 S.W.2d at 269.

As discussed above, Alley agreed to the amendment procedures in the underlying partnership agreements, which did not require a unanimous vote. Alley's limited bargaining power derives from its relatively small capital interest in the partnership and thus its limited voting power to reject certain amendments—a circumstance it assented to when it signed the original partnership agreements containing the amendment provisions. Alley consented to be bound by amendments approved by the requisite supermajority vote, whether or not it voted for the amendments. *See In re Plains All Am. Derivative Litig.*, 2016 WL 6634929, at *4; *Dominium Austin Partners*, 248 F.3d at 726.

After reviewing the totality of the circumstances in the record relating to the addition of the arbitration provisions, we conclude as a matter of law that Alley did not meet its burden in the trial court to establish an unconscionability defense to the validity and enforceability of the arbitration agreements.

### 4. Alley Did Not Prove a Defense to the Validity or Enforceability of the Arbitration Agreements

In the trial court, the LPs provided evidence that the arbitration agreements in the partnership agreement amendments were valid. Alley did not provide in the trial court any affidavits or other admissible evidence creating a disputed issue of material fact. *See Jack B. Anglin*, 842 S.W.2d at 269. Accordingly, we may resolve the LPs'

motions to compel summarily. *See id.* We conclude that the LPs met their burden to establish valid arbitration provisions, and, as a matter of law, Alley did not prove a defense to the arbitration agreements.

## E.     Arbitrator Determines Scope of Arbitration Provisions

The LPs argue that the scope of the arbitration provisions cover Alley's claim for production of additional documents by the partnership based on the broad definition of "Dispute" in the provisions. Alley asserts that, even if the arbitration provisions are valid, arbitration cannot be compelled in this case because the conduct giving rise to its claim occurred under the original partnership agreement, prior to the amendments that added the arbitration provisions.

Although the LPs point out that the arbitration provisions apply to disputes "now existing or hereafter arising" in connection with the partnership agreements, this question of scope should be deferred to the arbitrator under the arbitration provisions in this case. The arbitration provisions provide that arbitration "shall be conducted in accordance with the AAA Commercial Arbitration Rules."[3] Both the Arkansas Supreme Court and the Texas Supreme Court have concluded that an agreement to arbitrate disputes in accordance with AAA rules clearly and

---

[3] Rule 7(a) provides that the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, *without any need to refer such matters first to a court*." *See* AM. ARB. ASS'N, *Commercial Arbitration Rules and Mediation Procedures* (2022), https://adr.org/sites/default/files/CommercialRules_Web_1.pdf. *Total Energies* was decided based on the preceding version of these rules, which did not include the emphasized language.

24

unmistakably demonstrated the parties' intent to delegate arbitrability issues to the arbitrator. *See HPD, LLC v. TETRA Techs., Inc*., 424 S.W.3d 304, 311–12 (Ark. 2012); *Total Energies E&P USA, Inc. v. MP Gulf of Mex., LLC,* 667 S.W.3d 694, 708, 712 (Tex. 2023).

In the present case, we discern no provisions limiting this "clear and unmistakable" delegation of arbitrability of the scope of the provisions to the arbitrator. Accordingly, given our determination that the arbitration provisions are enforceable, we defer this question of scope to the arbitrator.

## F.     The LPs' First Issue is Sustained

The LPs established the existence of agreements to arbitrate. Alley failed to prove a formation defect or affirmative defense to the agreements. We decide in favor of the LPs on their first issue and conclude that the trial court erred by not enforcing the arbitration provisions in the partnership agreements on which Alley based its claims for partnership records. Because our determination of issue one resolves this appeal, we need not further address the LPs' second and third issues.

## IV.     Conclusion

We conclude that the trial court erred in impliedly denying the LPs' motions to compel arbitration and granting Alley's dispositive motion for summary judgment. Accordingly, we reverse and vacate the trial court's summary judgment order dated August 29, 2022, including its award of attorney fees. We also reverse

25

the trial court's implied order denying the LPs' motions to compel arbitration and render an order granting these motions and staying the case pending arbitration. We remand this case to the trial court for further proceedings consistent with this opinion and judgment.

In addition, we award the LPs their costs of this appeal and direct the Dallas County Clerk to immediately release to the LPs all supersedeas deposits and arrangements made in connection with this appeal.[4]

221021f.p05

/Emily Miskel/
EMILY A. MISKEL
JUSTICE

---

[4] Our review of the parties' agreements reveals cost- and fee-shifting provisions. We make no ruling or adjudication as to the enforceability, applicability, and effect of these provisions relative to this appeal or our disposition of the issues presented for review.



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

CAPROCQ CORE REAL ESTATE FUND, LP, AND CAPROCQ CORE REAL ESTATE FUND II, LP, Appellants

No. 05-22-01021-CV     V.

ESSA K. ALLEY REVOCABLE TRUST NO. 2, Appellee

On Appeal from the County Court at Law No. 5, Dallas County, Texas
Trial Court Cause No. CC-21-05539-E.
Opinion delivered by Justice Miskel. Justices Goldstein and Garcia participating.

In accordance with this Court's opinion of this date:

We **REVERSE** and **VACATE** the trial court's summary-judgment order dated August 29, 2022, including its award of attorney fees.

We **REVERSE** the trial court's implied order denying the motions to compel arbitration of appellants CAPROCQ CORE REAL ESTATE FUND, LP, AND CAPROCQ CORE REAL ESTATE FUND II, LP and **RENDER** an order granting these motions and staying the case pending arbitration.

We **REMAND** this case to the trial court for further proceedings consistent with this opinion and judgment.

We **DIRECT** the Dallas County Clerk to immediately release to appellants CAPROCQ CORE REAL ESTATE FUND, LP, AND CAPROCQ CORE REAL ESTATE FUND II, LP all supersedeas deposits and arrangements made in connection with this appeal.

It is **ORDERED** that appellants CAPROCQ CORE REAL ESTATE FUND, LP, AND CAPROCQ CORE REAL ESTATE FUND II, LP recover their costs of this appeal from appellee ESSA K. ALLEY REVOCABLE TRUST NO. 2.

Judgment entered this 25th day of October, 2024.